888 A.2d 364

John **RICHARDS**

v.

Donna **RICHARDS.**

No. 00491, Sept. Term, 2004.

Court of Special Appeals of Maryland.

Dec. 22, 2005.

264

Dorothy R. Fait (Marjorie G. DiLima, Fait & Wise, LLP, on brief), Rockville, for appellant.

John M. Quinn (Colleen K. Swanson, Ethridge, Quinn, McAuliffe, Rowan & Hartinger, on brief), Frederick, for appellee.

Panel MURPHY, C.J., HOLLANDER, and SHARER, JJ.

SHARER, J.

The parties to this appeal were divorced by judgment of the Circuit Court for Montgomery County, granted on the counter complaint of appellee, Donna Richards, filed in response to the complaint of appellant, John Richards. Aggrieved at the financial aspects of the judgment, John Richards has noted this appeal.

Appellant has presented for our review three assignments of error, which, as recast, are:

I. Whether the circuit court erred in its determination of the monetary award.

II. Whether the circuit court erred in reserving alimony.

III. Whether the circuit court erred in its award of counsel fees to appellee.

Finding neither error nor abuse of discretion, we shall affirm the judgment of the circuit court.

## FACTUAL BACKGROUND

### The Parties

Appellant and appellee were married on September 21, 1986. The judgment of divorce was entered on April 14, 2004. No children were born of the marriage.

During the marriage, John Richards was employed by the federal government, earning, at the time of this litigation, approximately $100,000 per year. His health is unremarkable. Donna Richards, 60 years of age at the time of trial, also worked for the federal government during the marriage. Her health, in contrast to appellant's, is fragile. In April 1990, she suffered an on-the-job injury and has been rated as disabled. In addition to her physical disability, she has a history of

emotional instability. Unable to work since the injury, she receives benefits from Social Security, private disability insurance,[1] and worker's compensation. She is eligible to receive Federal Employees' Retirement System (FERS) benefits. The current benefits provide her with a total monthly income of approximately $3,000.

## The Property

### Mrs. Goldberg

This litigation brings into play certain property and assets of appellee's mother, Celia Goldberg. In 1994, Mrs. Goldberg established a revocable trust into which she placed most of her assets. Donna Richards is a co-trustee. Mrs. Goldberg also established two bank accounts: an interest-bearing checking account at the Bank of America in Florida, and a savings account at the Torrington Savings Bank in Connecticut. In creating the accounts, Mrs. Goldberg named both John and Donna Richards as joint tenants with rights of survivorship.[2]

In 1998, Mrs. Goldberg entered an assisted living home. As her health deteriorated, appellant and appellee assumed a larger role in managing her financial affairs. In 1998, they consolidated her various banking and brokerage accounts, held in the trust, into one Schwab One Account. Appellee, as co-trustee, had check signing authority over this account. During Mrs. Goldberg's lifetime, checks were made payable to appellant on various occasions from the account.[3] Many checks

---

1. This benefit, currently $947.00 each month, will cease when appellee reaches the age of 65.

2. The record demonstrates numerous checks made payable to appellant through the Bank of America accounts.

3. Of course, the parties disagree as to the reasons for these checks. Appellant asserts they were "reimbursements" for his services to Mrs. Goldberg's estate and for other expenses relating to the care of Mrs. Goldberg. Appellee asserts that appellant was simply milking an inheritance away from her, as is evident, she claims, through his dominant stance over the parties' financial matters. The record demonstrates that numerous checks were made payable to appellant from Mrs. Goldberg's consolidated Schwab One Account. (8/20/00, $10,000;

from that account, payable to John Richards, were deposited into the parties' joint checking account.

Mrs. Goldberg died in 2000. In accord with her will, Donna Richards qualified as the executor. By way of disposition, the will created a testamentary trust, of which Donna Richards and her brother, Mrs. Goldberg's only other heir, were named as co-trustees. The will was silent as to John Richards. Her United States Estate Tax return designated as "joint" the two bank accounts as to which appellant and appellee were the survivors.

### The Parties

Appellant states in his brief that, during the marriage, he and appellee "co-mingled and merged all of their financial assets so that most of the assets were joint." Appellee concedes the point and further claims that appellant "wielded total control" over the parties' finances.

Shortly after the death of Mrs. Goldberg, the parties opened a joint Schwab One Account with the rights of survivorship. The initial deposit of $110,000 was made with funds from Mrs. Goldberg's Bank of America and Torrington accounts (respectively, $85,000 and $25,000). On the same day, appellee opened an individual Schwab One Account. Her initial deposit of $34,838.63 came from inherited funds. Appellee designated appellant as her attorney in fact with authority to draw from the account. On numerous occasions, checks payable to appellant were drawn on the account.

In 2001, the parties purchased real estate in Reno, Nevada, the source of funds being the joint Schwab One Account. Appellant testified that those funds came through Mrs. Goldberg's estate. Appellant also claims that he contributed $40,232.40 from his premarital Schwab Account into the joint account. The circuit court determined the Nevada property to be marital.

---

2/19/01, $2,993.55; 3/4/01, $5,505.82; 4/8/01, $2,610.69; 4/8/01, $11,523.50; 5/2/01, $4,380.25; 6/17/01, $9,505.33; 6/17/01, $266.56; 7/17/01, $1,710.97; 8/15/01, $4,417.30; 8/28/01, $1,553.90.)

In 2002, appellant removed about $100,000 from the joint Schwab One Account—one-half of the account balance at the time. At the time of trial, appellant had approximately $30,000 of that amount remaining in his individual Schwab One Account. The circuit court found those funds to be appellee's non-marital property.

We shall address additional facts as necessary for context.

## PROCEDURAL HISTORY

Suit was filed by appellant on February 6, 2003. Appellee filed a counter-complaint for absolute divorce, seeking alimony, a monetary award, and other relief, including counsel fees. Soon thereafter, the parties filed a joint statement concerning marital property, pursuant to Md. Rule 9–207.

Trial was held on March 29 and 30, 2004, and judgment was entered on April 14, 2004. Relevant to the issues in this appeal, the court ordered:

ORDERED that [appellee's] request for an award of alimony is hereby reserved, and it is further,

\* \* \*

ORDERED that the real property located in Reno, Nevada is determined to be marital property, and said property shall be sold and the net proceeds of sale divided equally between the parties, and it is further,

\* \* \*

ORDERED that [appellant] shall pay to [appellee] the sum of $105,000 as an adjustment of the equities of the parties in the Reno, Nevada real property, and it is further,

ORDERED that the Schwab One account titled in [appellant's] name is determined to be [appellee's] non-marital property, with a value of $30,000, and it is further,

\* \* \*

ORDERED that a monetary award is hereby granted in favor of [appellee], and against [appellant] in the amount of $207,290 as an adjustment of the equities of the parties in

and to the marital property listed on Schedule A, the Reno, Nevada real property, and the Schwab One account, and it is further,

ORDERED that a judgment is hereby entered in favor of [appellee] and against [appellant] in the amount of $207,290, and it is further,

\* \* \*

ORDERED that [appellant] shall pay to [appellee] as a contribution toward her attorney's fees incurred in connection with this proceeding the sum of $17,000, and it is further,

ORDERED that a judgment is hereby entered in favor of [the law firm representing appellee] in the amount of $17,000[.]

Appellant filed his timely Notice of Appeal on May 7, 2004.

## DISCUSSION

### I. Whether the circuit court erred in its determination of the monetary award.

We hold, for three reasons, that the circuit court appropriately granted appellee a monetary award in the amount of $207,290. First, the court correctly found that the $30,000 contained in appellant's individual Schwab One Account was appellee's non-marital property. Second, the court exercised proper discretion when it adjusted the parties' equities in the Nevada property and other marital property. Finally, the court articulated its consideration of the requisite statutory factors in granting a monetary award.

### Standard of Review

In our review of the monetary award, we shall apply two standards of review. First, we utilize the "clearly erroneous" standard to the court's determination of what is, and what is not, marital property because "[o]rdinarily, it is a question of fact as to whether all or a portion of an asset is marital or non-marital property." *Innerbichler v. Innerbi-*

*chler,* 132 Md.App. 207, 229, 752 A.2d 291 (2000); *see also* Md. Rule 8–131(c). Factual findings that are supported by substantial evidence are not clearly erroneous. *Collins v. Collins,* 144 Md.App. 395, 409, 798 A.2d 1155 (2002). Second, as to the court's decision to grant a monetary award, and the amount thereof, we apply an abuse of discretion standard of review. *Gallagher v. Gallagher,* 118 Md.App. 567, 576, 703 A.2d 850 (1997). Within that context, "we may not substitute our judgment for that of the fact finder, even if we might have reached a different result." *Innerbichler, supra,* 132 Md.App. at 230, 752 A.2d 291.

The court granted appellee a monetary award in the amount of $207,290. That amount is composed of: (1) $30,000 (the monies in appellant's individual Schwab One Account, which the court determined to be non-marital property of appellee); (2) $105,000 (the "adjustment of the equities" of the parties in the Nevada Property); and (3) a marital property adjustment in the amount of $72,290. Appellant challenges two aspects of the monetary award: the $30,000 Schwab One Account and the adjustment of equities in the Nevada real estate. We discuss the pertinent law and proceed to appellant's contentions.

### Monetary Award

█ When a party seeks a monetary award, the court must follow a three step procedure:

First, for each disputed item of property, the court must determine whether it is marital or non-marital. Second, the court must determine the value of all marital property. Third, the court must determine if the division of marital property according to title will be unfair; if so, the court may make an award to rectify the inequity.

*Collins, supra,* 144 Md.App. at 409, 798 A.2d 1155 (internal citations omitted) (citing *Doser v. Doser,* 106 Md.App. 329, 349–50, 664 A.2d 453 (1995)); *see also* Md. Rule §§ 8–203, 8–204, 8–205. Appellant's challenges on appeal require us only to examine the first and third step of this procedure.

As to the first step, classification of the property as marital or non-marital, we observe that section 8–201(e)(1) of the Family Law Article of the Maryland Annotated Code defines "marital property" as "property, however titled, acquired by 1 or both parties during the marriage." This includes "any interest in real property held by the parties as tenants by the entirety unless the real property is excluded by valid agreement." § 8–201(e)(2). Pursuant to section 8–201(e)(3), however, marital property does not include property:

(i) acquired before the marriage;

(ii) acquired by inheritance or gift from a third party;

(iii) excluded by valid agreement; or

(iv) directly traceable to any of these sources.

■ After a court has determined the nature of property and the value thereof, it must proceed to the third step of the procedure: rectifying the inequities, if any. In addressing step three, the court shall consider section 8–205 of the Family Law Article of the Maryland Annotated Code.

(a) *Grant of Award.*—Subject to the provisions of subsection (b) of this section, after the court determines which property is marital property, and the value of the marital property, the court may . . . grant a monetary award . . . as an adjustment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded.

(b) *Factors in determining amount and method of payment or terms of transfer.*—The court shall determine the amount and the method of payment of a monetary award . . . after considering each of the following factors:

(1) the contributions, monetary and nonmonetary, of each party to the well-being of the family;

(2) the value of all property interests of each party;

(3) the economic circumstances of each party at the time the award is to be made;

(4) the circumstances that contributed to the estrangement of the parties;

(5) the duration of the marriage;

(6) the age of each party;

(7) the physical and mental condition of each party;

(8) how and when specific marital property or interest in the pension, retirement, profit sharing, or deferred compensation plan, was acquired, including the effort expended by each party in accumulating the marital property or the interest in the pension, retirement, profit sharing, or deferred compensation plan, or both;

(9) the contribution by either party of property described in § 8–201(e)(3) of this subtitle to the acquisition of real property held by the parties as tenants by the entirety;

(10) any award of alimony and any award or other provision that the court has made with respect to family use personal property or the family home; and

(11) any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award or transfer of an interest in the pension, retirement, profit sharing, or deferred compensation plan, or both.

Md.Code Ann., Fam. Law § 8–205(a)–(b) (Repl.Vol.1999 & Supp.2004) (alterations added). The court shall articulate that it has considered all the factors when granting (or denying) a monetary award request. *See Imagnu v. Wodajo,* 85 Md.App. 208, 582 A.2d 590 (1990).

As we have noted, the monetary award to appellee was an effort to achieve an "adjustment of the equities," relating to appellant's individual Schwab One Account and the Nevada real estate. We address each item in turn.

### Appellant's Individual Schwab One Account

The evolution of appellant's individual Schwab One Account is as follows. Mrs. Goldberg established two bank accounts (Bank of America and Torrington). As her health deteriorated, Mrs. Goldberg sought the assistance of the parties in managing her financial affairs. In what the circuit court found to be an accommodation to facilitate their care of her,

Mrs. Goldberg added the names of appellant and appellee as joint tenants of the two accounts, with the right of survivorship.[4] Following the death of Mrs. Goldberg, creating their entitlement to the proceeds of the accounts, the parties consolidated the accounts into a joint Schwab One Account. The parties were joint owners of the consolidated account.

Later, for some reason not fully clear from the record, the parties placed the funds remaining in the consolidated account into a second joint Schwab One Account. Appellant acknowledges that these funds originated from Mrs. Goldberg's consolidated account. In addition, appellant made one deposit to that account of non-marital funds in the amount of about $40,000.

In October 2002, the funds in the joint Schwab One Account approximated $200,000. Appellant, prior to the divorce, withdrew one-half of that balance and placed it into an individual Schwab One Account titled in his name only. At the time of trial, $30,000 remained in appellant's sole account.

■ The court determined the $30,000 to be appellee's non-marital property, even though it was in an account titled only to appellant. Implicit in the court's conclusion, and supported by the record, is the finding that the $30,000 was the residue of Mrs. Goldberg's funds, from the accommodation bank accounts. The evidence supports that finding because (1) Mrs. Goldberg did not make a gift to appellant; and (2) appellant did not inherit from Mrs. Goldberg.

Appellant contends that "[a]ny remaining assets of Appellant after splitting the remainder of the Joint Schwab One account cannot be traced to any non-marital source." In support of this contention, appellant asserts that "direct tracing of Appellee's inheritance and gifts from her mother was not possible due to the commingling of assets in the joint Schwab One account. In addition, Appellee did not meet her burden of proof regarding the jointly titled bank accounts

---

4. Indeed, the circuit court found that Mrs. Goldberg took this action for the sake of convenience in the management of her affairs.

being gifts solely to her and not to her and appellant, either individually or jointly." Appellant's contention lacks merit.

The trial court was able to trace the evolution of the $30,000 balance, which arose substantially from Mrs. Goldberg's accounts. The fact of appellant's one-time contribution to the account, although substantial, does not defeat the court's ability to trace.[5] Indeed, in *Noffsinger v. Noffsinger*, 95 Md.App. 265, 620 A.2d 415 (1993), this Court has said that:

> the mere fact that non-marital funds rested in the same account as marital funds does not compel the conclusion that the funds commingled. *See e.g. Melrod [v. Melrod]*, 83 Md.App. [180], at 188, 574 A.2d 1 [ (1990) ] (only when the spouse chooses to commingle marital and nonmarital funds to the point that direct tracing is impossible does his or her property lose its nonmarital status).

95 Md.App., at 284, 620 A.2d 415.

In *Noffsinger*, Judge Bloom also pointed out that "[T]he party seeking to demonstrate that particular property acquired during the marriage is nonmarital must trace the property to a nonmarital source." *Id.* at 283, 620 A.2d 415. In the matter before us, the trial court was satisfied, as are we, that appellant did not meet his tracing burden. Because we do not find the trial court's factual findings on the tracing issue to have been clearly erroneous, we will not disturb the findings.

■ Appellant also suggests that the court's marital property determination is undermined by the fact that Mrs. Goldberg made gifts to him of the funds at issue. The evidence does not support his assertion. He produced no evidence to show gifts from his mother-in-law.[6] In Maryland,

---

5. We also note here that, contrary to appellant's assertions, the circuit court did consider this contribution when granting appellee the monetary award.

6. Appellant argues that appellee had the burden to establish that the funds from her mother were in fact gifted to her. First, the record refutes this argument as appellee is named as one of the primary heirs

one who asserts the status of donee bears the burden to demonstrate "(1) donative intent [on the part of the donor]; (2) actual delivery by donor; and (3) acceptance by the donee." *Fantle v. Fantle*, 140 Md.App. 678, 689, 782 A.2d 377 (2001) (alterations added) (citing *Dorsey v. Dorsey*, 302 Md. 312, 318, 487 A.2d 1181 (1985)). Appellant is not able to satisfy any of those elements.[7]

### Adjustment of the Equities in the Nevada Property

Appellant also takes exception to the circuit court's adjustment of the equities in the Nevada real property. In support of his argument that the property was improperly included in the monetary award calculation, appellant claims that the funds used to acquire it were marital, that is, from the parties' joint Schwab One Account. He adds that the joint Schwab One Account was built with the funds from Mrs. Goldberg's two accounts, appellee's inherited funds, and contributions from each party's individual Schwab One Accounts. As a result, he posits, the funds are commingled, and direct tracing is impos-

---

in Mrs. Goldberg's will. Second, Mrs. Goldberg, at no time, mentions appellant in her will. Appellant relies solely on the assertion that because he was listed with the right of survivorship over the accounts he automatically is entitled to his marital share of those accounts. We believe that had Mrs. Goldberg intended these accounts, or any portion thereof, to pass to appellant, she would have accounted for that in her Will.

7. The concept of a gift is even more strained when John Richards's admitted poor relationship with Mrs. Goldberg is taken into account. He had been quoted as referring to Mrs. Goldberg as "a Jewish bitch" and a "horrible person." On cross-examination, the following discussion ensued:

Q. For example, you didn't think much of Donna's mother, did you?
A. I didn't like her. She treated Donna badly. She was manipulative, so I wasn't unhappy to see her die.
Q. You weren't unhappy to see her die?
A. Nope, not at all.
Q. This is the woman you got all this money from?
A. I didn't want all the money.
Q. But you want it today though?
A. (No response.)
Q. Do you want it?
A. Well, I'm certainly not going to give it away.

sible. Appellant, moreover, suggests that the court's adjustment reveals its intent to award appellant the *full* value of the Nevada property, despite its marital classification.

■ We affirm the circuit court's determination that the Nevada property is marital property. This determination is supported by the record. The property was acquired during the marriage of the parties, essentially by the use of funds from their joint Schwab One Account.[8] That account consisted *substantially* of appellee's inherited funds; thus, a *substantial* amount of appellee's funds were contributed to the purchase of the property. After ordering the Nevada property sold, and the proceeds equally apportioned, the court made an equitable adjustment in the amount of $105,000 to reflect the contribution of appellee's inherited funds.

■ We find no abuse of the court's discretion in the equitable adjustment, and recall that Maryland law requires "equitable" not "equal" division of property once it is determined to be marital in nature. *See Alston v. Alston,* 331 Md. 496, 508, 629 A.2d 70 (1993).

### Statutory Factors

In his third, and final, attack on the monetary award, appellant argues that the circuit court failed to consider all of the enumerated factors in section 8–205 of the Family Law Article of the Maryland Annotated Code. Our review of the record discloses no such failure.

The circuit court, with reference to the parties' Rule 9–207 joint statement, appropriately followed the three step process in arriving at the monetary award. The court first determined the nature of all property, marital or non-marital, and then determined the property value. Finally, the court entered a monetary award as an adjustment of the equities of

---

8. This account being the one established after (1) Mrs. Goldberg's death and (2) the establishment of Mrs. Goldberg's consolidated Schwab account.

the parties. We find neither error nor abuse of discretion in the court's process or ultimate finding.

## II. Whether the circuit court erred in reserving alimony.

Among Donna Richards's prayers for relief in her counter complaint was a claim for indefinite alimony. The circuit court, rather than awarding alimony, reserved on appellee's request. The reservation, appellant argues, was an abuse of discretion.

Specifically, appellant contends that appellee, presently self-sufficient, will not experience future negative financial circumstances. He points to appellee's entitlement to Social Security, worker's compensation, disability benefits, and, later, permanent retirement benefits. He asserts that "appellee ... was left with substantial assets which, even if equally divided, leaves her in the same or better position than appellant going into retirement. No need for alimony could have been foreseeable." Finally, appellant argues that the court's reservation of alimony is unsupported by the evidence. We find no merit in appellant's contentions.

In reserving on appellee's request for alimony, the circuit court stated

THE COURT: ... And her income, including all of the checks she's presently receiving, is substantially less that what Mr. Richards' income is. But I—

[APPELLANT]: Well, you have to compare net to net.

THE COURT: No, I understand but more than a few thousand dollars, it is.

\* \* \*

And her expenses are certainly reasonable. We can argue his expenses (inaudible) she's living a lavish lifestyle, she's not. But she is going to have some funds available to her to meet her needs. And at the present time she's doing okay, but if her worker's compensation ends and the disability is going to end in five years—

280

[APPELLANT]: One component, right?

THE COURT: She'll be left with social security and whatever retirement she has—

[APPELLANT]: Right.

THE COURT:—earned which at that point may not be enough to meet her needs, I don't know. And the whole idea of reserving alimony is still possible, but it's not something that's done a lot anymore.

But I would have to make a finding that if this was simply about incomes, the income of the [appellant] and the income of the [appellee], based on the length of their marriage and all of the factors in the alimony statute, I would award [appellee] alimony.

She certainly qualifies for alimony if you just apply the principles of income and expense. But considering all of the factors which in (inaudible) include a fact that [appellant], I mean I guess relatively soon, he's going to retire—

[APPELLANT]: Right.

THE COURT:—himself, so his income will be what his retirement is.

[APPELLANT]: Right.

THE COURT: And at the present time [appellee] is doing okay by her worker's compensation, and I don't really know how to fashion an order to accommodate a reduction in the event her reduction from his retirement equal [sic] to what she is receiving from worker's compensation, I'm not sure, I don't think you can do that either.

But, I think its appropriate under these circumstances to reserve the issue of alimony for some future date

 The Court of Appeals has stated that "[t]he circuit courts have ... inherent power ... to reserve as to alimony." *Turrisi v. Sanzaro*, 308 Md. 515, 526, 520 A.2d 1080 (1987) (alteration added). Indeed, "[t]he Alimony act [Title 11 of the Family Law Article to the Maryland Annotated Code] has not abolished the inherent power of an equity court to reserve jurisdiction as to alimony when it awards a divorce." *Turrisi,*

*supra,* 308 Md. at 528, 520 A.2d 1080. This power, as observed by the Court, is a "discretionary" one. *Turrisi, supra.*

 Nonetheless, the court should not exercise this discretionary power in every case before it. *Collins, supra,* 144 Md.App. 395, 430, 798 A.2d 1155. Specifically:

> Reserving jurisdiction over the issue of alimony is not an abuse of discretion when the facts at trial "show that a highly probable basis for awarding [either rehabilitative or indefinite alimony] will exist in the immediate future."

*Francz v. Francz,* 157 Md.App. 676, 694, 853 A.2d 839 (2004) (alterations in original) (quoting *Turrisi, supra,* 308 Md. at 530, 520 A.2d 1080). Furthermore,

> it is improper for a court to reserve deciding the issue of alimony "simply because there may be some vague future expectation of circumstances that might show a basis for alimony", or "the possibility that the [alimony] claimant might become aged, infirm, or disabled, or that standards of living could conceivably be unconscionably disparate at some unknown future date. . . ."

*Francz, supra,* 157 Md.App. at 694, 853 A.2d 839 (quoting *Turrisi, supra,* 308 Md. at 529, 520 A.2d 1080.)

The authority to award alimony to a divorcing spouse is provided in Title 11 of the Family Law Article of the Annotated Code of Maryland, §§ 11–101 *et seq.* (the Alimony Act). Section 11–106(a)–(c) sets forth the procedure for the determination of amount and duration of an award of alimony. While section 11–106(a) grants discretion to the court to determine the amount and duration of an alimony award, section 11–106(b) specifies certain statutory factors which the court must consider:

> (b) *Required Considerations.*—In making the determination, the court shall consider all the factors necessary for a fair and equitable award, including:

> (1) the ability of the party seeking alimony to be wholly or partly self-supporting;

(2) the time necessary for the party seeking alimony to gain sufficient education or training to enable that party to find suitable employment;

(3) the standard of living that the parties established during their marriage;

(4) the duration of the marriage;

(5) the contributions, monetary and nonmonetary, of each party to the well-being of the family;

(6) the circumstances that contributed to the estrangement of the parties;

(7) the age of each party;

(8) the physical and mental condition of each party;

(9) the ability of the party from whom alimony is sought to meet that party's needs while meeting the needs of the party seeking alimony;

(10) any agreement between the parties;

(11)the financial needs and financial resources of each party, including:

(i) all income and assets, including property that does not produce income;

(ii) any award made under §§ 8–205 and 8–208 of this article;

(iii) the nature and amount of the financial obligations of each party; and

(iv) the right of each party to receive entitlement benefits; and

(12) whether the award would cause a spouse who is a resident of a related institution as defined in § 19–301 of the Health–General Article and from whom alimony is sought to become eligible for medical assistance earlier than would otherwise occur.

The court may make an award of rehabilitative or indefinite alimony. In addressing whether the latter award is appropriate, section 11–106(c) prescribes

(c) *Award for indefinite period.*—The court may award alimony for an indefinite period, if the court finds that:

(1) due to age, illness, infirmity, or disability, the party seeking alimony cannot be expected to make substantial progress toward becoming self-supporting; or

(2) even after the party seeking alimony will have made as much progress toward becoming self-supporting as can reasonably be expected, the respective standards of living of the parties will be unconscionably disparate.

**** As we recall the record on the issue of alimony, we recall that appellant is in good health and fully and gainfully employed. Appellee, in contrast, is 60 years of age, physically disabled, with a history of emotional illness as well, and unable to be employed. The state of her health, in the future, is uncertain.

We are satisfied that the evidence before the circuit court established more than "some vague future circumstance" or "the possibility that [appellee] might become aged, infirm, or disabled." Indeed, the evidence is sufficient to "show that a highly probable basis for awarding [alimony] will exist in the immediate future." We find no abuse of discretion.

### III. Whether the circuit court erred in its awarding of counsel fees to appellee.

Lastly, appellant contends that the circuit court erred in ordering him to contribute $17,000 toward appellee's attorneys' fees. Specifically, he asserts that the court failed to consider the financial resources of each party or their financial needs, as required by Fam. Law § 8–214. Moreover, appellant contends that the court failed to take into account, in considering counsel fees, the "large" monetary award; that appellee is in a financial position to afford her own attorney's fees; that appellee failed to meet her burden of proof to support her claim for fees; and that appellee offered no credible evidence as to the reasonableness of the fees. Indeed, appellant contends that there is nothing in the record that reflects any consideration by the court as to the reasonableness of the fees.

Contrary to appellant's assertions, appellee testified as to the fees incurred in defending the divorce action, and in prosecuting her counter-complaint. Her counsel's fee statements were introduced and reviewed by the court. Moreover, the court was in the best position to observe the quality and quantity of legal services provided to appellee.

Section 8–214 of the Family Law Article provides for the award of attorneys' fees in divorce actions:

§ 8–214. Award of reasonable and necessary expenses.

(a) *Definition.* In this section, "reasonable and necessary expense" includes:

(1) suit money;

(2) counsel fees; and

(3) costs.

(b) *Award authorized.* At any point in the proceeding under this subtitle, the court may order either party to pay to the other party an amount for the reasonable and necessary expense of prosecuting for the reasonable and necessary expenses of prosecuting or defending the proceeding.

(c) *Considerations by court.* Before ordering the payment, the court shall consider:

(1) the financial resources and financial needs of both parties; and

(2) whether there was substantial justification for prosecuting or defending the proceeding.

(d) *Lack of substantial justification and good cause.* Upon a finding by the court that there was an absence of substantial justification of a party for prosecuting or defending the proceeding, and absent a finding by the court of good cause to the contrary, the court shall

award to the other party the reasonable and necessary expense for prosecuting or defending the proceeding.

\* \* \*

(f) *Counsel fees.* As to any amount awarded for counsel fees, the court may:

(1) order that the amount awarded be paid directly to the lawyer; and

(2) enter judgment in favor of the lawyer.

Md.Code Ann., Fam. Law Art. § 8–214(a)–(f) (1999 Repl. Vol & 2004 Supp.)

An award of attorney's fees rests in the court's sound discretion. We will not disturb an award absent an abuse of that discretion. *McCleary v. McCleary,* 150 Md.App. 448, 466, 822 A.2d 460 (2002). In awarding counsel fees, the circuit court said:

> THE COURT: Okay, and as far as the requests for attorney's fees are concerned, I have considered the provisions of Family Law Article 8–214.
>
> Excuse me ... and with regard to attorney's fees, I believe under all the circumstances in this case, particularly the finding I've made that the assertion made by [appellant] that the funds previously belonging to Mrs. Goldberg had been gifted to him were not justified, that it would be reasonable and appropriate under all of these circumstances, considering the result and the amount of effort made and the hours spent.
>
> And then a fee of $17,000 will be (inaudible) judgement [sic] in favor of your law firm, [counsel for appellee] against [appellant] for that amount.

We are satisfied that the trial court adequately followed the guidelines set forth in section 8–214. Therefore, we find no abuse of discretion.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED; COSTS ASSESSED TO APPELLANT.**