COURT OF APPEALS OF VIRGINIA

Present:    Judges Frank, Humphreys and Kelsey
Argued at Richmond, Virginia

YASMINE S. HAMAD

OPINION BY
v.      Record No. 1148-12-2                    JUDGE D. ARTHUR KELSEY
MARCH 26, 2013

SAMMY N. HAMAD

FROM THE CIRCUIT COURT OF THE CITY OF COLONIAL HEIGHTS
Herbert C. Gill, Jr., Judge

Jason P. Seiden (Ronald R. Tweel; Michie Hamlet Lowry
Rasmussen & Tweel, PLLC, on briefs), for appellant.

Brandy M. Poss (Lawrence D. Diehl; Barnes & Diehl, P.C., on
brief), for appellee.

On several grounds, Yasmine S. Hamad appeals a final divorce decree awarding 60% of

the marital assets to her husband.  Finding no reversible error in the trial court's decision, we

affirm.

I.

On appeal, "we view the evidence in the light most favorable to the prevailing party,

granting it the benefit of any reasonable inferences."  White v. White, 56 Va. App. 214, 216, 692

S.E.2d 289, 290 (2010) (quoting Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833,

835 (2003)).  "That principle requires us to discard the evidence of the appellant which conflicts,

either directly or inferentially, with the evidence presented by the appellee at trial."  Owens v.

Owens, 41 Va. App. 844, 848-49, 589 S.E.2d 488, 491 (2003) (citation omitted).

So viewed, the evidence before the trial court showed that Yasmine S. Hamad (wife) and

Sammy N. Hamad (husband) married in 1982.  In 2009, they each filed complaints seeking a

divorce.  They agreed to a no-fault divorce and submitted to the trial court their requests for

equitable distribution and attorney fees. Relying entirely upon depositions and exhibits, neither presented any *ore tenus* evidence for the court to consider.

The trial court reviewed the evidence, read the parties' memoranda, and heard oral argument. The court thereafter issued a detailed letter opinion addressing equitable distribution and attorney fees. The issues on appeal involve the distribution of several liquid asset accounts in the joint names of husband and his mother: a Scottrade account, a Janus account, an Edward Jones account, a Peoples Advantage account, and an EVB Certificate of Deposit. The court determined the value of each account and identified the separate and marital portions of the Scottrade and Janus accounts. All of the account values derived directly from account statements introduced as joint exhibits. The parties presented no other valuation evidence.

The trial court then addressed the distribution factors under Code § 20-107.3. The court considered wife's admitted adultery during husband's departure of "nearly four years" from the marital home. App. at 1664. The court noted husband's assertion that wife's infidelity caused the marriage to dissolve, as well as wife's excuse that she was "lonely" during her husband's absence. Id. The court also took into account the significant contributions made to the marriage by both parties. Based upon this evidence, the court distributed 60% of the marital assets to husband and 40% to wife.

Dissatisfied with the court's explanation for the 60/40 division, wife filed a "Motion for Clarification." Id. at 1666. Among other things, wife contended the 60/40 division was inconsistent with "what appears to be a favorable discussion of [wife's] side of the case," and speculated that perhaps "the figures were merely reversed" by inadvertence. Id.

At the hearing on the motion, wife's counsel requested that the trial court further clarify the 60/40 division ratio. Wife's counsel expressed his desire "to stress to the Court" that he was

not "asking for a rehearing." Id. at 1674. Rather, counsel simply "wanted to make sure there wasn't a two percent chance that the Court didn't somehow in drafting the letter, switch those percentages," given the court's "quite favorable" remarks about wife in the letter opinion. Id. at 1678-79.

From the bench, the court assured wife's counsel that the 60/40 split in husband's favor was not a clerical error. The court made no mention of wife's adultery in its clarification, but identified another consideration not mentioned in the letter opinion:

> With regard to the 60/40 split, the method that the Court used in evaluating the respective equities of the parties, quite frankly I thought that the defendant failed in tracing many of the assets. And therefore, they became either hybrid or marital assets?
>
> On the other hand, as [husband's counsel] pointed out, many of those assets could have been foreseeably family assets. But the lack in tracing and the way that these parties did business, left the Court almost in a vacuum to make a determination as to the credibility of and the authenticity of those funds.

Id. at 1681. Wife's counsel did not object to the court's additional explanation.

At the hearing, wife's counsel also raised what he called a "half issue," id. at 1677, noting that the court's letter opinion had used the liquid account balances found on the statements offered into evidence. Though wife's counsel thought he and husband's counsel had already "clarified" the point between themselves, id., he said the account statements were not current as of the time of the equitable distribution hearing and stated that current statements were needed "to bring everything up to date," id. at 1678. The court did not specifically address the liquid accounts in its remarks from the bench but did restate the general rule: "The value of the assets [is] as of the date of the hearing. That's the law of the case and the law of Virginia. . . . And as far as the other assets, it's the value as of the date of the hearing." Id. at 1681-82.

At the court's request, wife's counsel drafted the proposed final decree for the court's consideration. The court entered the decree as written, except for one minor handwritten edit. The decree reaffirmed the court's findings, noting they were "more particularly described in its letter ruling," and restated the "characterization of the property." Id. at 1691. The decree also included this restatement of the court's earlier comments from the bench: "[M]any of the contested assets, [husband] was unable to completely trace which caused the assets to become marital or hybrid. However, these assets could have been foreseeably [husband's] family assets. The Court considered the substantial contributions of [husband's] parents." Id. at 1698. Consistent with the court's letter opinion, the final decree distributed 60% of the marital assets to husband and 40% to wife.

The final decree did not address wife's contention that the valuation figures should be updated with more current account balances. Instead, the decree recited the amounts previously noted in the court's letter opinion, which were based upon the account statements offered by the parties into evidence.

Wife's counsel endorsed the order with the caveat, "Seen and objected to . . . based on [wife's] objections filed herein." Id. at 1700. Three of wife's objections are relevant to this appeal:

- [Wife] objects to the Court's ruling which awarded [husband] . . . 60% of the marital estate or assets. . . . [T]he Court utilized a factor, which is not an appropriate factor, to determine the extent of equitable distribution under Code Section 20-107.3. The Court, after ruling that numerous accounts held jointly by [husband] and his mother were "marital accounts," basically utilized some remaining doubts about the classification of those assets to award [husband] 60%.

- [Wife] objects to the Court's ruling which did not award a majority of the marital assets to [wife] as the Court did not properly consider all of the statutory factors found in Code Section 20-107.3.

- [Wife] objects to the Court's ruling which did not call for a division of the current balance of numerous liquid accounts such as CDs and money market funds, and instead only awarded [wife] a percentage of the balance of those marital accounts at the time that the evidence was produced by way of deposition almost 6 months before. There was no need to "value" accounts that are entirely marital and liquid such as money market funds, stock funds and CDs.

Id. at 1687-88.

## II.

Wife retained new counsel to appeal the trial court's ruling. Wife's appellate counsel raises two assignments of error. The first asserts the trial court erred (for four separate reasons) in awarding husband 60% of the marital assets. The second contends the court erred by using stale values for the liquid accounts (calculated generally around the time of several depositions) rather than the account balances at the time of the equitable distribution hearing. We find several aspects of wife's arguments on appeal to be procedurally defaulted and conclude the remaining arguments have no merit.

### A. PROCEDURALLY DEFAULTED SUB-ARGUMENTS

Wife supports her first assignment of error challenging the 60/40 distribution ratio with four sub-arguments. As wife sees it, the trial court erroneously (1a) distributed marital assets "as if" they were hybrid; (1b) treated its own "speculation and confusion over the evidence" as a distribution factor; (1c) took into account "the substantial contributions" to the marriage made by husband's parents; and (1d) "failed to identify any factor" justifying the 60/40 distribution ratio. Appellant's Br. at 3.

In the trial court, however, wife made only two objections to the 60/40 distribution ruling: First, she claimed that the court based its decision on its "remaining doubts about the classification" and improperly treated those doubts as a distribution factor. App. at 1687.

- 5 -

Second, she argued that the court "did not properly consider all of the statutory factors." Id. at 1688.

To some extent, wife's sub-arguments on appeal attempt to flesh out her rather general objections in the trial court. But, in doing so, her sub-arguments go considerably beyond the objections made in the trial court. Rule 5A:18 precludes us from addressing on appeal issues different from those presented to the trial court. If the differences are merely semantic, we overlook them as insignificant. But truly substantive differences, even if quite subtle, cannot be overlooked.[1] Nor should they be.

Trial courts deserve to have the contested issues framed clearly and precisely. Only then can a trial court respond to a particular argument, either with a corrective action or with a clarification that could make an appeal wholly unnecessary. See generally Brandon v. Cox, 284 Va. 251, 255, 726 S.E.2d 298, 300 (holding that procedural default principles "protect the trial court from appeals based upon undisclosed grounds" and "enable the trial judge to rule intelligently"), amended by 2012 Va. LEXIS 179, 736 S.E.2d 695, and reh'g granted, 2012 Va. LEXIS 178 (2012). This is particularly true in modern divorce and equitable distribution cases, where even a slight rewording of a point can demonstrably change its conceptual contours.

---

[1] See, e.g., Online Res. Corp. v. Lawlor, 285 Va. 40, 57, 736 S.E.2d 886, 895 (2013) ("That was the only argument made to the trial court against this instruction, and therefore that is the only argument we will consider on appeal."); Dowdy v. Commonwealth, 278 Va. 577, 591, 686 S.E.2d 710, 717-18 (2009) (finding appellant's argument waived where he argued in the trial court a denial of "*effective* assistance of counsel," but argued on appeal a violation of his "*right* to counsel" (emphasis added)); Juniper v. Commonwealth, 271 Va. 362, 385, 626 S.E.2d 383, 399 (2006) (declining to consider appellant's assignment of error because his argument at trial, that "it would be more economical" for the Commonwealth to provide certain files, was different from his argument on appeal, that reconstructing the files "was unduly burdensome, if not impossible"); Riddick v. Commonwealth, 226 Va. 244, 249, 308 S.E.2d 117, 119 (1983) ("We focus on defendant's objections made at trial because his argument on appeal is slightly different." (citing former Rule 5:21)).

In this case, we see no need to dissect wife's first assignment of error in an effort to compare and contrast specific phrases of her sub-arguments on appeal with her objections in the trial court. Instead, we will simply assume her sub-arguments on appeal at least encompass the two objections she made in the trial court regarding the distribution ratio. Our appellate review, however, ends there. We will not address the restated sub-arguments to the extent that they subtly recast her trial court objections in substantive ways.

B. THE 60/40 DISTRIBUTION RATIO

Viewing wife's argument on appeal through the lens of her objections in the trial court, we discern a single, common theme. Wife contends the trial court misunderstood the distinction between classification and distribution. She interprets the court's remarks from the bench during the hearing on her motion for clarification as a palpable demonstration of its confusion. Under wife's interpretation, the trial court divided the marital property as if it were hybrid. For several reasons, we disagree.

To begin with, we presume trial judges "know the law and correctly apply it." White, 56 Va. App. at 217, 692 S.E.2d at 290 (citation omitted). "An appellant can rebut the presumption by showing, either by the ruling itself or the reasoning underlying it, the trial judge misunderstood the governing legal principles. We are particularly skeptical of appellate efforts to piece together such a conclusion from fragmented remarks from the bench." Id. at 217-18, 692 S.E.2d at 291. And we decline invitations to "fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied." Damon v. York, 54 Va. App. 544, 555, 680 S.E.2d 354, 360 (2009) (citation omitted).

That said, we acknowledge the trial court's remarks are difficult to interpret. Even so, when viewed in a favorable context, they are consistent with Virginia law. Equitable distribution

involves three distinct decisions: classification, valuation, and distribution. See Marion v. Marion, 11 Va. App. 659, 665, 401 S.E.2d 432, 436 (1991). Property can be classified as marital, separate, or hybrid. Hybrid property involves a mixture of "part marital property and part separate property." Code § 20-107.3(A)(3). The party seeking to segregate the separate property bears the burden of proof to equitably trace the truly separate component. See Sfreddo v. Sfreddo, 59 Va. App. 471, 480, 720 S.E.2d 145, 150 (2012) (citation omitted).[2] If a preponderance of the evidence fails to do so, the property remains fully marital. See Rahbaran v. Rahbaran, 26 Va. App. 195, 209, 494 S.E.2d 135, 141 (1997); 1 Brett R. Turner, Equitable Distribution of Property § 5:63, at 638 (3d ed. 2005) ("If any link in the tracing chain cannot be proven, . . . the asset is marital property.").

The trial court found that husband's parents had made substantial monetary and non-monetary contributions to the parties' business ventures during the marriage.[3] The court concluded, nonetheless, that husband did not satisfy his burden of tracing the separate property in what "could have been foreseeably family assets" and observed that husband's "fail[ure] in

---

[2] See also Holden v. Holden, 31 Va. App. 24, 27, 520 S.E.2d 842, 844 (1999); von Raab v. von Raab, 26 Va. App. 239, 248, 494 S.E.2d 156, 160 (1997).

[3] We acknowledge wife's argument that insufficient evidence supports the trial court's finding on this issue. Our review of the record reveals ample evidence of pecuniary and non-pecuniary contributions made by husband's parents to the marital estate. See, e.g., App. at 27-28 (describing husband's parents' daily involvement with the store); 113 (confirming husband's mother was not paid for working at the store); 271-73 (describing husband's father's unpaid work at the convenience store); 292 (identifying "$40,000 check that [husband's father] gave [husband] and [wife] as a gift"); 312 (describing gifts of $10,000 and a car given to husband and wife for their marriage); 321-24 (recalling husband's mother's uncompensated work at the store and deli); 391-92 (describing husband's "parents' role" as ensuring that husband and wife "had good security for [their] future retirement"); 402-03 (recalling that husband's parents gave $25,000 to help purchase the Petersburg store); 406-07 (describing husband's parents' work at the store); 427 (recalling that husband "[d]idn't pay [his] father or mother a dime" for their work in the store); 499 (confirming husband's parents "took nothing from the store" except "a tank of gas" in return for their work).

tracing many of the assets" created an evidentiary "vacuum" that precluded the court from identifying those assets as anything other than "hybrid or marital." App. at 1681.

The question then becomes whether the court's concerns are so out of bounds as to constitute an abuse of discretion, which is precisely what wife argues: "The court's own language indicated how confused it was by the Husband's failure to trace, but, nonetheless, gave the Husband improper consideration in the distribution of the marital property on a 60/40 basis." Appellant's Br. at 23-24. "Consequently," wife reasons, "the court's proper classification of the assets as marital, but utilization of confusion and speculation as to whether there might be some hybrid component, clearly led this court to its 60/40 division of marital property." Id. at 24.

We believe wife's argument caricatures the trial court's reasoning by suggesting the court somehow misunderstood the difference between classification and distribution. As wife sees it, the court reluctantly classified the property as marital, but changed the distribution ratio because of its speculative belief that perhaps some of the property was actually separate. This assertion makes several assumptions which we find unpersuasive.

First, wife assumes the court's clarifying remarks regarding the contributions of husband's parents to the marital estate revealed the *sole* justification for the 60/40 ratio. The trial court's letter opinion, however, also considered wife's admitted adultery as well as her less-than-compelling loneliness excuse. That consideration, by itself, would have fully justified the 60/40 ratio adopted by the court.[4] The court's later remarks about husband's parents'

---

[4] See, e.g., Robbins v. Robbins, 48 Va. App. 466, 481, 632 S.E.2d 615, 623 (2006) (upholding 65/35 split in favor of husband where "wife's romantic involvement with a co-worker was a major contributing factor and the precipitating event in her decision not to continue the marriage" (internal quotation marks omitted)); Watts v. Watts, 40 Va. App. 685, 702, 581 S.E.2d 224, 233 (2003) (affirming trial court's award of "substantially disparate share of the marital estate to wife" based, in part, on husband's adultery and its effects on the family); O'Loughlin v.

contributions identified an *additional* consideration justifying its distribution decision. The trial court did not say it was the only basis for the 60/40 ratio.

We believe, moreover, that wife misinterprets not only what the trial court said but what it did. The court did not classify the property as marital and then circuitously distribute it as if it were non-marital. The court, in deciding how to fairly distribute the marital property, simply took into account the fact that husband's family had contributed a considerable amount of property to the marital estate. Virginia courts, as well as many others,[5] consider this a valid factor in the distribution decision. See Marion, 11 Va. App. at 666, 401 S.E.2d at 437 (stating that the "source of funds," in this case family members of the parties, is a "factor properly considered when distributing the property"); Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990) (stating that the "source of funds is a particularly significant factor where funds have been transmuted"); Lambert v. Lambert, 6 Va. App. 94, 103-04, 367 S.E.2d 184, 190 (1988) (recognizing the consideration of a spouse's contribution as an amelioration of the

---

O'Loughlin, 20 Va. App. 522, 528, 458 S.E.2d 323, 326 (1995) (upholding 60/40 split in favor of wife where husband's adultery "had a negative impact on the marital partnership").

[5] See generally Richards v. Richards, 888 A.2d 364, 372-73 (Md. Ct. Spec. App. 2005) (affirming trial court's "equitable adjustment in the amount of $105,000" to wife where the account at issue, although classified as marital property due to inadequate tracing, "consisted *substantially* of [wife's] inherited funds" (emphasis in original)); Davis v. Davis, 378 S.W.3d 426, 430-31 (Mo. Ct. App. 2012) (addressing contributions to the marriage by a spouse's parent, the court explained "that while the 'source of funds' rule should not be 'invoked in the division of marital property,' there was nothing wrong in the trial court 'tracing the source of the funds used to acquire' the property because spousal contribution is one of the statutory factors to consider in dividing marital property"); Keller v. Keller, 18 S.W.3d 589, 599-600 (Mo. Ct. App. 2000) (permitting consideration of "each party's 'contribution' in acquiring the parties' marital property in its division of the same and in doing so, in effect, traced the source of its acquisition"); Gorecki v. Gorecki, 693 S.E.2d 419, 424-25 (S.C. Ct. App. 2010) (upholding award to husband of "10% more of the marital estate than Wife" where husband had "spent a portion of his inheritance to improve the marital residence" because the "ultimate goal of apportionment is to divide the marital estate, as a whole, in a manner which fairly reflects each spouse's contribution to the economic partnership").

"inequity" of finding commingled property fully marital).  As one commentator persuasively explained:

> No classification system is perfect, and for one reason or other, contributions from nonmarital sources sometimes do not create separate property interests.  When this happens, the contribution may be considered as one relevant factor favoring an unequal division of the marital estate.  The effect is that the division stage functions as an equitable steam valve, allowing the court to adjust the final division of property to account for quirks and flaws in the classification system . . . .
>
> When separate property is traced into a presently-existing asset, but the amount of the separate contributions cannot be proven, the separate contribution is generally lost.  The court nevertheless retains the power to recognize the lost separate contribution by making an unequal division, either of the commingled asset or the marital estate in general.

2 Brett R. Turner, *supra* §§ 8:5, 8:6, at 791, 794 (citation omitted).

Finding no error in the court's explanation for its 60/40 distribution decision, we next address wife's argument that the trial court "did not properly consider *all* of the statutory factors found in Code Section 20-107.3."  App. at 1688 (emphasis added).  We find this assertion meritless.  The letter opinion, amplified by the final decree, identified and discussed the court's consideration of each of the statutory factors.  The factors weighing in husband's favor included his wife's admitted adultery and the contributions of his parents to the marital estate — either of which, as noted earlier, would have fully justified the trial court's decision.

As we have often said, "Virginia law does not establish a presumption of equal distribution of marital assets."  Watts v. Watts, 40 Va. App. 685, 702, 581 S.E.2d 224, 233 (2003) (citation omitted).  A trial court "need not start off at the 50-yard line and then look to the discretionary factors of Code § 20-107.3(E) to move the ball marker up or down the sidelines."  Robbins v. Robbins, 48 Va. App. 466, 480-81, 632 S.E.2d 615, 622 (2006).  Instead, a trial court "must consider each of the § 20-107.3(E) statutory factors and only then determine what relative

- 11 -

weight to assign to each." Id. at 481, 632 S.E.2d at 622. "What weight, if any, to assign to this or that factor in the overall decision lies within the trial court's sound discretion." Id. (brackets omitted).

Equitable distribution, after all, is simply the judicial task of distributing property equitably. The statutory factors serve only to guide the decisionmaking process, not to dictate a precise algorithm yielding an exact and indisputably correct result. The governing principles of law must be honored scrupulously, to be sure, but they should never downgrade the decision from a conscientious exercise of judgment into a mechanical application of formulas.

Consequently, an equitable distribution decision "can be overturned only by a showing of an abuse of that discretion." Smith v. Smith, 43 Va. App. 279, 286, 597 S.E.2d 250, 254 (2004) (citation omitted). An abuse of discretion occurs only when "reasonable jurists" could not disagree as to the proper decision. Brandau v. Brandau, 52 Va. App. 632, 641, 666 S.E.2d 532, 537 (2008). This principle necessarily implies that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts — yet still remain entirely reasonable. This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie.[6]

_____

[6] Wife cites Hoback v. Hoback, 208 Va. 432, 435, 158 S.E.2d 113, 116 (1967), for the proposition that we should give the trial court's factfinding less deference because the evidence was presented by deposition rather than by live witnesses. Hoback suggests as much by intimating that a decree based upon depositions "is not as strong and conclusive" as one based upon live testimony. Id. The cases cited by Hoback, however, make clear that whatever the diminution in appellate deference — if measurable at all — it is *very* slight. Even if based entirely upon depositions, a trial court's decree "is presumed to be correct, even though the evidence may be in sharp conflict, and the burden is on him who seeks to overturn it to show that it is manifestly wrong." Canavos v. Canavos, 200 Va. 861, 866, 108 S.E.2d 359, 363 (1959); see also Martin v. Martin, 202 Va. 769, 773, 120 S.E.2d 471, 474 (1961). We fail to see how the

In sum, the trial court's 60/40 distribution ratio reflects a reasonable and equitable judgment, fully consistent with the legal principles governing this case. Wife offers no persuasive reason for us to conclude otherwise.

### C. VALUATION DATE OF LIQUID ASSETS

Wife also argues the "trial court erred by dividing the liquid marital assets using a valuation date of a much earlier *de bene esse* deposition rather than the date of the hearing." Appellant's Br. at 33. We disagree.

As noted earlier, the parties submitted the case to the trial court entirely by exhibits and *de bene esse* depositions. During one of the depositions, wife's counsel suggested that at least two of the joint accounts should be divided at whatever their value was at the time "the Court decides to do something with it." App. at 373. Husband's counsel agreed with this suggestion. Id. at 374.[7] At the equitable distribution hearing, the parties submitted various depositions and exhibits identifying the liquid accounts. The exhibits included statements reflecting recent account activity and the balances of the accounts around the time of the depositions.

Neither wife nor husband submitted updated account balances to the trial court at the equitable distribution hearing. In its letter opinion listing the accounts and their balances, the court used the balances stated on the exhibits — the only factual information available to the court at the time. At the hearing on wife's motion for clarification, wife's counsel informed the court that he had "not received statements [he] thought [he was] getting" from the two previous

---

"manifestly wrong" standard, Canavos, 200 Va. at 866, 108 S.E.2d at 363, is any different from the "plainly wrong" standard, Code § 8.01-680, generally applicable to cases tried in the circuit courts. At any rate, the semantic variance has no effect on this case, as we find the trial court's findings neither manifestly nor plainly wrong.

[7] A few sentences of wife's 61-page pre-trial brief also mentioned this agreed-upon approach. App. at 1518.

quarters, which he "would like to have . . . to draft the order." Id. Counsel described this point as a "half issue" that he thought counsel had already "clarified" between themselves. Id. at 1677. In response, the trial court reiterated its understanding that, absent special circumstances, the assets should be valued "as of the date of the hearing." Id. at 1681-82.

Wife's counsel never provided more current account balances to the trial court — either at the hearing on his motion for clarification or when the final decree (which he drafted at the court's request) was entered. Nor did he proffer that the more current balances were likely to be significantly different from the balances noted on the exhibits presented at the equitable distribution hearing. Even on appeal, wife's counsel presents no proof of whether, and to what extent, the valuation figures were inaccurate.

Given these omissions, we fail to see how the trial court erred in using the only account balances ever presented to it. The court correctly acknowledged the general principle that the valuation should correspond to the evidentiary hearing[8] and never suggested otherwise. The trial court did not make a conscious decision to *favor* the account balances presented during the depositions and *disfavor* more current information presented at the evidentiary hearing. There simply was no more current information.

Because the "burden is on the parties to provide the trial court sufficient evidence from which it can value their property," Bosserman v. Bosserman, 9 Va. App. 1, 5, 384 S.E.2d 104, 107 (1989) (quoting Taylor v. Taylor, 5 Va. App. 436, 443, 364 S.E.2d 244, 248 (1988)), appellate courts "cannot continue to reverse and remand" equitable distribution cases "where the

---

[8] On brief, wife acknowledges that Code § 20-107.3(A) generally requires assets to be valued as of the date of the evidentiary hearing. She asserts, however, that the court's equitable distribution hearing was not a "true evidentiary hearing" because no witnesses testified live and the parties submitted only exhibits and depositions. Appellant's Br. at 34. We disagree. An evidentiary hearing is a hearing in which evidence, of any kind, is presented.

parties have had an adequate opportunity to introduce evidence but have failed to do so," Bowers

v. Bowers, 4 Va. App. 610, 617, 359 S.E.2d 546, 550 (1987) (citation omitted)); see also

Anderson v. Anderson, 29 Va. App. 673, 690, 514 S.E.2d 369, 378 (1999). The court, therefore,

did not err in using the only valuation evidence presented to it.

III.

Finding no error in the trial court's 60/40 distribution decision or its valuation of the

marital liquid assets, we affirm.[9]

Affirmed.

---

[9] Both husband and wife seek an award of attorney fees on appeal. See generally Brandau, 52 Va. App. at 642, 666 S.E.2d at 537-38; O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). We deny both requests.