COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Chaney, Frucci and Senior Judge Annunziata
Argued at Fairfax, Virginia


SHERRY M. DOYLE

v.      Record No. 1615-22-4

CHRISTOPHER J. DOYLE                    MEMORANDUM OPINION* BY
                                        JUDGE VERNIDA R. CHANEY
CHRISTOPHER J. DOYLE                         APRIL 1, 2025

v.      Record No. 1236-23-4

SHERRY M. DOYLE


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Jeannette A. Irby, Judge; Matthew P. Snow, Judge[1]

Jacob E. Smith (Sherry M. Doyle, *pro se*, on briefs), in Record
No. 1615-22-4.[2]

Erik D. Baines (Barnes & Diehl, P.C., on brief), for appellee
Christopher J. Doyle.

Christopher J. Doyle, *pro se*, in Record No. 1236-23-4.

Jacob E. Smith (John C. Whitbeck, Jr.; WhitbeckBennett, P.C., on
brief), for appellee Sherry M. Doyle.


The circuit court awarded Christopher J. Doyle (husband) a divorce from Sherry M. Doyle

(wife) on the grounds that the parties lived separate and apart for more than one year.  Wife assigns

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Judge Irby entered the final order of divorce referenced in Record No. 1615-22-4.
Judge Irby subsequently retired, and Judge Snow entered the final order referenced in Record
No. 1236-23-4.

[2] The Court grants Sherry Doyle's motion for an extension of time to file a reply brief,
and the same is considered timely filed.

error to the circuit court's decisions on (1) grounds for divorce, (2) equitable distribution, (3) support awards, and (4) attorney fees. Husband argues that the circuit court erred by interpreting the divorce order not to require wife to refinance the home. We agree with wife that the circuit court erred by failing to distribute marital property in the form of husband's Navy Federal Credit Union account. Otherwise, we see no error in the circuit court's rulings. This Court therefore affirms in part and reverses in part the circuit court's judgment, and remands this case for proceedings consistent with this opinion.[3]

BACKGROUND[4]

Wife and husband married on August 3, 2006, and five children were born or adopted during the marriage. Husband is a licensed professional counselor and is the executive director and president of the board of directors for a nonprofit organization, called Institute for Healthy

---

[3] On April 27, 2023, wife moved to strike husband's brief in Record No. 1615-22-4 because husband's counsel failed to obtain leave before refiling a signed brief, at the request of the clerk's office. Husband objected and moved for sanctions under Code § 8.01-271.1. This Court denies both motions.

On August 22, 2023, wife moved to dismiss husband's appeal in Record No. 1236-23-4 on the grounds that he did not comply with Rules 5A:6 and 5A:25. Rule 5A:6 requires a party appealing a circuit court's ruling to file a notice of appeal with the circuit court clerk within 30 days of the final judgment. Rule 5A:25 specifies the procedure and timeline for filing a designation of an appellant's assignments of error.

Defects in a notice of appeal that otherwise adequately identifies the case appealed are not grounds for dismissing that appeal. *See Vick v. Siegel*, 191 Va. 731, 737 (1951) ("There has been, we think, a substantial compliance with the rule. While it is plainly made the duty of counsel to designate for printing the parts of the record specified in [former] Rule 5:1, Sec. 6(d), we hold that failure to designate the assignments of error in this case is not sufficient ground for dismissing the writ of error."); *cf. LaCava v. Commonwealth*, 283 Va. 465, 470 n.* (2012) (stating that "the purpose of the notice of appeal is merely to place the opposing party on notice and to direct the clerk to prepare the record on appeal" and that it is meant to protect appellee, "'not to penalize the appellant'" (quoting *Avery v. Cnty. Sch. Bd.*, 192 Va. 329, 333 (1951))). The record shows that husband sent wife a copy of the notice of appeal and that his opening brief contains his assignment of error. Given husband's substantial compliance with the rules, this Court, therefore, denies wife's motion to dismiss.

[4] This Court views "the evidence in the light most favorable to the prevailing party," husband, granting him the benefit of any reasonable inferences. *Shah v. Shah*, 70 Va. App. 588, 591 (2019) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003)).

Families. He also has his own business, called Northern Virginia Christian Counseling, LLC. Wife is a teacher with the public school system. During the marriage, wife also taught vocal lessons and obtained a doctorate. In 2020, before their separation, both parties worked part time at Patrick Henry College.

On July 7, 2020, the parties and their children were vacationing in Florida with wife's mother and extended family. Wife's mother became upset about a comment that husband made to his nephew. Later that day, wife's mother confronted husband, and they started arguing. Husband asked that they "go outside," and when she refused, he left.

On July 9, 2020, husband and wife started arguing about this incident, which then escalated into disagreements about other matters. Wife's mother arrived in the middle of their argument, and everyone was "yelling at each other." Wife's mother was standing with a table behind her, when husband "shoved" her into the wall, causing her to hit the table and stumble. Wife's mother then moved toward husband. Husband pushed wife's mother, and wife caught her before she fell. Husband admitted that he was the only person out of the three of them that touched another person.

The police responded to the Florida condominium, and wife pressed charges and obtained a protective order against husband. A week later, husband was served with a protective order and arrested for felony and misdemeanor charges arising from the incident with wife's mother.[5] At approximately the same time, husband filed a complaint for divorce.

Upon husband's return to Virginia, he changed the door locks and garage door codes for the marital residence. He also removed wife's piano—which she used when teaching her lessons—and placed it in storage, to which only he had access. Wife and the children lived in the basement of her parents' home.

_____

[5] After husband completed a domestic violence seminar, the Florida charges were dismissed.

Wife answered and counterclaimed to husband's complaint for divorce. The circuit court entered a pendente lite order, awarding $2,500 per month in spousal support to wife, $3,500 per month in child support to wife, and $7,530 in attorney fees to wife. The circuit court also ordered that neither party could dissipate the marital assets or create liens on the marital property, pending a settlement or further order.

Meanwhile, wife asked husband to move out of the former marital residence so she and the children could live there; husband refused. The parties listed the house for sale, and while the house was on the market, wife moved for exclusive use and possession of the home. The circuit court granted wife's motion, effective February 1, 2021, but ordered that "exclusive use and possession shall not transfer to the wife on February 1, 2021 if the home is under contract for sale." In December 2020, after the entry of the circuit court's order, husband and wife received two full-price offers, but wife did not want to sell the house. Wife and the children moved into the former marital residence on February 1, 2021.

On April 29, 2021, the parties entered a consent custody and visitation order. They agreed to joint legal custody, with wife having final decision-making authority and primary physical custody of the children. The parties also established a visitation schedule for the school year, holidays, and summer.

Before the equitable distribution hearing, wife filed motions to compel, alleging that there were "substantial discovery deficiencies that require[d] resolution." The circuit court entered a consent order, compelling husband to provide certain documents relating to his counseling business and his individual tax returns. Following this consent order, the circuit court entered another order in which husband agreed to provide additional documents to wife. Wife asked the circuit court to value the former marital property as of the purchase date. Wife claimed a separate interest in the home, arising, in part, from sale proceeds of premarital property.

The day before the equitable distribution hearing in July 2021, wife moved in writing for a continuance because husband had not provided enough information to assess his income and financial resources in a timely manner. She claimed that the weekend before the trial, husband provided for the first time documentation about a Navy Federal Credit Union bank account (NFCU account x1424) with a balance of $107,000 as of June 2021. Wife also orally moved for a continuance at the equitable distribution hearing.[6] The circuit court granted wife's motion and ordered that the "date of the hearing is deemed to have commenced on July 27, 2021." The equitable distribution hearing was rescheduled to April 26 and 27, 2022.

Before the next equitable distribution hearing, husband moved for an alternate valuation date of the joint savings account from which wife had transferred $110,068.02 to her business checking account, to which he did not have access. He claimed that she "wasted marital funds for a non-marital purpose." Wife objected, arguing that she used the funds to pay for her and the children's living expenses, marital debts, and her attorney fees.

Wife renewed her motion for an alternate valuation date of the former marital residence. Notwithstanding her previous motion, wife argued that the circuit court should value the marital residence as of the purchase date or, in the alternative, the date of the originally scheduled equitable distribution hearing, July 27, 2021. Wife asserted that she should not be prejudiced by any growth in the value of the home since July 27, 2021, because they had to continue the equitable distribution hearing due to husband's failure to disclose financial assets.

On April 26 and 27, 2022, the parties appeared before the circuit court to present evidence on the grounds of divorce, equitable distribution, spousal support, child support, and attorney fees. The circuit court heard evidence that husband and wife had had difficulties during their marriage and sought marital counseling on several occasions. Husband presented evidence that wife was

---

[6] The record does not include a transcript of the July 2021 hearing.

"controlling" and "demeaning" toward him. Wife presented evidence that husband was abusive and threw things at her.

On cross-examination, husband admitted to exchanging text messages with another man during the marriage. Husband testified that he and the other man were "really good friends" who had a "brotherly love" for one another. Wife, on the other hand, thought husband's relationship with his friend was "inappropriate."

The circuit court also heard evidence about the parties' assets and liabilities. The parties presented evidence about their bank accounts, retirement funds, and vehicles, as well as their credit cards, student loans, and car loans. Both parties testified about the former marital residence and their estimated values of the property. Husband preferred to sell the home and divide the equity equally. Wife reiterated her desire to stay in the house with the children.

The circuit court also heard evidence about NFCU account x1424, which husband disclosed shortly before the previous equitable distribution hearing. Husband admitted that NFCU account x1424 contained marital property before the parties' separation. Unbeknownst to wife, NFCU account x1424 had balances between $60,000 and $100,000 for the months preceding July 2021.[7] Throughout the litigation, husband used the account as his "personal checking and savings," into which he deposited his post-separation earnings. He estimated withdrawing approximately $28,500 for taxes in April 2022, so the account balance at the time of the equitable distribution hearing was approximately $9,000.[8]

---

[7] Husband failed to produce any statements for the account before January 10, 2021. As of January 10, 2021, the account had a balance of $34,268.03. The circuit court sustained wife's objection to husband's testimony about the balance of the account at the time of the separation because he had failed to provide the requested documents in discovery.

[8] The statement ending April 9, 2022, reported an ending balance of $43,571.

- 6 -

Both parties presented their income and expense statements. Husband reported his total monthly income as $18,865, which reflected his earnings from the non-profit organization, his business, and seminars.[9] He claimed an average monthly deficit of $8,172 in 2021 and did not know about his 2022 income and expenses. Husband had limited information about his receipts and expenses for his businesses; he had no profit and loss statement. Until July 2021, he admittedly wrote his support checks out of the business account for Northern Virginia Christian Counseling.

Wife also testified about her income and expenses. At the time of the equitable distribution hearing, wife worked for Loudoun County Public Schools, earning approximately $83,700 a year. She had supplemented her income by teaching at Patrick Henry College, but in March 2021, she was notified that her teaching contract would not be renewed. Wife asserted that husband tried to have her fired from this job. Husband denied this but admitted that both he and wife lost their jobs at Patrick Henry College. Wife also taught vocal lessons to students out of her home studio. Forced to close her business for a period when husband denied her access to her home studio and piano, wife reported earning only $3,500 from her vocal lessons in 2021. Wife testified that since October 2021, she had been renting out the basement of the former marital residence for $1,500 per month. She did not include the rental income in her income and expense statement. Wife confirmed that if the circuit court did not award her the marital residence, then she would not have rental income.

Finally, wife submitted evidence about her attorney fees. Wife's attorney fees and costs totaled $93,635 as of July 19, 2021. After the continuance, wife's attorney fees totaled $120,120 as of April 27, 2022, which was a difference of $26,485. Husband requested $54,992.50 in fees from January 2021 through April 27, 2022. He had also incurred attorney fees with previous counsel.

---

[9] In August 2020, husband's employment at Patrick Henry College ended; he requested reinstatement in January 2021, but was not successful.

The parties presented closing arguments on June 1, 2022. Wife requested an award of $3,500 per month in spousal support for an undefined duration. Husband argued that wife earned sufficient income to support herself and did not need spousal support. Both parties requested that the circuit court calculate child support according to the statutory guidelines. The parties agreed that wife maintained the health insurance for the children.[10] Wife argued that husband produced no evidence of his reasonable business expenses other than Schedule C from his 2020 tax return. She also stressed that husband had used his business bank account to pay his child support, which was not a business expense. Husband argued that wife's income should include the rental income she had been receiving. Wife emphasized that she would not have rental income if she were not awarded the marital residence.

Husband asked the circuit court to deny wife's motion for an alternate valuation date because the parties had two opportunities to sell the house for full price in December 2020, but wife refused. Husband agreed to wife having the former marital residence if she could refinance the mortgage within 60 days and pay husband for his share; otherwise, he asked that the house be listed for sale. He asked for the house to be appraised at its current value. Wife argued that an alternate valuation date was called for because the circuit court would have considered its value at the scheduled equitable distribution hearing in July 2021 but for husband's failure to produce in discovery documents about his NFCU account. She asked the circuit court to accept her testimony about the value of the former marital residence and discredit husband's testimony; she noted that there were no appraisals. She also asked the circuit court to award her the former marital residence for "the stability of these children."

Wife also requested equitable distribution of NFCU account x1424. She referred to the bank statements reflecting a balance of $82,134.39 as of the date of the July 2021 hearing and asked

---

[10] The record includes no evidence of childcare expenses.

for half of that value. Wife emphasized that husband opened the account during the marriage, and therefore, the account was marital property. Husband countered that "the money was used to pay off taxes for his business," and the funds no longer exist. Therefore, he concluded, the account could not be divided.

Wife requested an award of $120,120 for her attorney fees, or at least $26,485, which represented the amount of fees she incurred after the July 2021 continuance. She emphasized that husband forced them to file several motions to compel and continue the July 2021 equitable distribution hearing by not divulging a marital asset until a couple of days before trial.

Wife requested a divorce based on cruelty or constructive desertion grounds. She emphasized that husband abused her and assaulted her mother. On July 27, 2022, the circuit court issued its ruling from the bench. The circuit court described the marriage as "dysfunctional." Despite the behavior from "both parties," the circuit court granted a divorce to husband based on the parties living separate and apart for more than one year.

The circuit court considered each of the equitable distribution factors. As for the circumstances and factors that contributed to the dissolution of the marriage, the circuit court noted that "this factor always comes down to credibility of the parties," and it found that husband was "evasive to just about every question." The circuit court denied wife's motions for an alternate valuation date for the marital residence, finding wife did not meet her burden to trace any separate property she may have contributed to the former marital residence from the sale proceeds of the house she owned before the marriage. The circuit court also found that it could not value the home as of the original trial date. Stating that "it would be imprudent . . . to place a value" on the former marital residence "at this time," the circuit court ordered that the property be appraised. The circuit court also allowed the parties to agree to a value and "save themselves each some money."

The circuit court then stated that wife could buy the home for the appraised value, less the mortgage balance, her student loan, and her car loan, and pay husband 50 percent of the remaining equity. The circuit court allowed wife 60 days after the appraisal to buy husband's share. If she could not do so, then the circuit court ordered the former marital residence be listed for sale with "the same provisions with respect to what needs to be paid out of the marital home." If the parties could not agree on a realtor, refused to sign a listing agreement, or refused to place a lock box on the home, then the circuit court would appoint a commissioner of sale.

The circuit court divided the parties' bank accounts, retirement accounts, and marital debt. The circuit court found that NFCU account x1424 was marital and titled solely in husband's name.[11] After acknowledging that this was the account that husband failed to disclose in discovery and led to a continuance of the hearing, the circuit court stated that it would "deal with that separately" when it discussed the attorney fee award.

Next, the circuit court considered the statutory spousal support factors. The circuit court found that both parties were "earning to their earning capacity" at the time of the hearing. The circuit court also considered the parties' employment at Patrick Henry College and found that husband "succeeded in his efforts to having his wife terminated. . . . I don't know how that helped anyone . . . ." The circuit court then granted a seven-year reservation[12] of spousal support to wife. However, the circuit court did not make the reservation retroactive because wife had needed pendente lite spousal support "to get back on her feet, get a new job, and provide stability for herself and the children."

---

[11] It appears that the circuit court mistakenly referred to this account by a different name in its ruling, but the parties agree that the circuit court meant NFCU account x1424.

[12] "When a trial court grants a reservation of spousal support it is awarding the right to seek periodic or lump sum support and maintenance at a later date." *Payne v. Payne*, 77 Va. App. 570, 591 (2023).

In calculating child support, the circuit court determined wife's monthly income to be $8,500, which included the $1,500 in rental income. It calculated husband's monthly income to be $18,865. After including the cost of health insurance for the children, husband's monthly child support obligation was $3,206. Husband was responsible for 70 percent of the children's uninsured medical expenses.

The circuit court awarded wife $20,000 for her attorney fees because of husband's failure to disclose NFCU account x1424, which caused a delay in the trial. The circuit court directed wife's attorney to prepare the final order of divorce.

On September 15, 2022, wife moved to suspend the final order of divorce. On September 16, 2022, the circuit court entered the final order of divorce. Wife filed her objections and moved to reconsider. Husband also noted his objections and moved to reconsider. On October 12, 2022, 26 days after the entry of the final order, the circuit court denied both motions.

Wife appealed the final order of divorce. Husband then moved for the appointment of a special commissioner to sell the former marital residence. Husband argued that wife had refused to cooperate on getting an appraisal because she appealed the circuit court's ruling and did not think that she needed to follow the final order. Wife objected and moved to stay the enforcement of the final order. On December 2, 2022, the circuit court granted husband's motion and appointed a special commissioner "with the power and authority to have the parties['] former marital residence appraised and the power and authority to further effectuate and enforce the provisions" of the final order of divorce. On January 6, 2023, the circuit court denied wife's motion to stay the enforcement of the order.

In February 2023, wife moved for entry of an order because she wanted to buy husband's interest in the house and proposed a buyout amount. Husband objected, arguing that wife's calculations were incorrect and she had not provided documentation confirming her refinance of

the loan. The circuit court referred the matter to the special commissioner to "investigate and consider the parties' respective positions" on wife's purchase of husband's interest in the property.

In his "First Interim Report," the special commissioner found that the final order of divorce did not require a refinance before the buyout. The special commissioner noted that the circuit court could have ordered wife to refinance and remove husband's name from the mortgage, but the final order of divorce did not include such language. The special commissioner then determined the ultimate buyout price to be $155,550.37.

After considering the final order of divorce, the special commissioner's report, and the parties' arguments, the circuit court agreed with the special commissioner and found that the final order of divorce had "made no reference" to removing husband's name from the mortgage. The circuit court calculated the amount that wife had to pay husband for his share in the property and ordered her to do so within 60 days. Upon her payment, husband then had to execute a special warranty deed, conveying his interest in the property to wife. Husband appeals the order regarding the buyout of the property.

ANALYSIS

"[A]ll trial court rulings come to an appellate court with a presumption of correctness." *Sobol v. Sobol*, 74 Va. App. 252, 272 (2022) (alteration in original) (quoting *Wynnycky v. Kozel*, 71 Va. App. 177, 192 (2019)). "In challenging the court's decision on appeal, the party seeking reversal bears the burden to demonstrate error on the part of the trial court." *Id.* at 272-73 (quoting *Barker v. Barker*, 27 Va. App. 519, 535 (1998)).

I. Equitable Distribution

This Court will not overturn an equitable distribution award unless we find "an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of

- 12 -

evidence to support the award." *Dixon v. Dixon*, 71 Va. App. 709, 717-18 (2020) (quoting *Anthony v. Skolnick-Lozano*, 63 Va. App. 76, 83 (2014)). "[T]o the extent that the appeal requires an examination of the proper interpretation and application of Code § 20-107.3, it involves issues of law, which the Court reviews *de novo* on appeal." *Id.* at 718. "Because making an equitable distribution award is often a difficult task, 'we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case.'" *Sobol*, 74 Va. App. at 272 (quoting *Howell v. Howell*, 31 Va. App. 332, 350 (2000)).

### A. *NFCU Account x1424*

Wife argues that the circuit court erred by failing to make any award regarding NFCU account x1424. While the circuit court classified the account as marital, she contends that the circuit court failed to value or distribute it. Instead, the circuit court stated that it would "deal with" the account when it ruled on attorney fees. The circuit court found that husband's "lack of forthrightness" with respect to NFCU account x1424, which had "a significant amount of money in it," caused a "delay in the trial for several months." The circuit court considered husband's actions in awarding attorney fees to wife, but it did not value or distribute NFCU account x1424.

Husband argues that wife did not preserve her argument for appeal because she only noted her objection to the final order, without bringing the issue to the circuit court's attention. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. Rule 5A:18 "requires a litigant to make timely and specific objections, so that the trial court has an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals." *Zeng v. Wang*, 82

Va. App. 326, 346 (2024) (internal quotation marks omitted) (quoting *Brown v. Commonwealth*, 279 Va. 210, 217 (2010)).

A "litigant may satisfy Rule 5A:18 in multiple ways." *Brown*, 279 Va. at 217. For instance, she could present her position "in closing argument." *Moncrief v. Div. of Child Support Enf't ex rel. Joyner*, 60 Va. App. 721, 729 (2012) (quoting *Lee v. Lee*, 12 Va. App. 512, 515 (1991) (en banc)). A litigant may also "include an objection and reasons therefor in the final order or at least tender such an order to the trial judge." *Lee*, 12 Va. App. at 516; *see also* Code § 8.01-384(A) ("Arguments made at trial via written pleading, memorandum, recital of objections in a final order, oral argument reduced to transcript, or agreed written statements of facts shall, unless expressly withdrawn or waived, be deemed preserved therein for assertion on appeal."). If "a trial court is aware of a litigant's legal position and the litigant did not expressly waive such arguments, the arguments remain preserved for appeal." *Brown*, 279 Va. at 217.

Wife requested equitable distribution of NFCU account x1424 during closing arguments. On the same day that the circuit court entered the final order of divorce, wife filed her written objections, including the circuit court's "failure to make an award" regarding NFCU account x1424. Thus, the record reflects that wife preserved her arguments for appeal when she made the circuit court aware of her request for equitable distribution of the account.

"Equitable distribution involves three distinct decisions: classification, valuation, and distribution." *Hamad v. Hamad*, 61 Va. App. 593, 602 (2013). Here, the circuit court failed to value and distribute NFCU account x1424 as required by Code § 20-107.3. Therefore, the case is remanded for the circuit court to value and distribute the account.

## B. *Former Marital Residence*

At first, both parties challenged on appeal the circuit court's ruling concerning the valuation and allocation of the marital residence. After the final order of divorce, the circuit court entered an

order valuating and allocating the property that has mooted wife's arguments.[13]  Husband argues, meanwhile, that the circuit court erred by misinterpreting the final order of divorce and finding that wife was not required to refinance the mortgage when she bought out his interest in the former marital residence.  He contends that if wife did not refinance the property, then he would still have an interest in the home, which would be counter to the intention of buying his interest.  Husband claims that the circuit court intended for wife to refinance the mortgage and remove his name from the loan.

"[C]ircuit courts have the authority to interpret their own orders."  *Roe v. Commonwealth*, 271 Va. 453, 457 (2006).  This Court will defer to a circuit court's interpretation of its own order as long as that interpretation is reasonable.  *Watts v. Commonwealth*, 82 Va. App. 428, 443 (2024) (en banc).  "We apply an abuse of discretion standard in determining whether the circuit court's interpretation of its order is reasonable."  *Id.* (quoting *Roe*, 271 Va. at 458).

Husband concedes that "nowhere in the [r]ecord does [the circuit court] specifically say or not say that [wife was] required to refinance the marital home."  However, husband asserts that the circuit court had intended for wife "to refinance as a part of the buyout" because the circuit court had assigned and apportioned all the other marital debt.  The special commissioner and the circuit court disagreed, finding that the circuit court could have ordered wife to refinance and remove husband's name from the mortgage, but it did not do so.  The circuit court found that it "was not specifying any one process" for wife to buy husband's interest in the property.  The circuit court's

---

[13] "A question is moot when 'the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'"  *Bd. of Supervisors of Fairfax Cnty. v. Ratcliff*, 298 Va. 622, 622 (2020) (quoting *McCarthy Holdings LLC v. Burgher*, 282 Va. 267, 275 (2011)).  Following the final order of divorce, the circuit court entered another order valuing the property, calculating the parties' interests in it, and allowing wife to buy out husband's interest in the property.  Wife conceded this development at oral argument before this Court and withdrew her assignments of error concerning the valuation and equity in the marital property.

interpretation of the final order of divorce was not an abuse of discretion, and we find that interpretation reasonable. This Court, therefore, affirms the circuit court's judgment.

## C. *Equitable Distribution Factors*

Wife argues that the circuit court "failed to properly consider" the equitable distribution factors in Code § 20-107.3(E). She specifically contends that the circuit court "fail[ed] to allocate the account [NFCU x1424]," and should have given her a "more favorable" equitable distribution award and "more favorable time within which to execute it," especially considering husband's "culpability in causing the dissolution of the marriage" and the "significant importance of the marital residence" to wife.[14]

"Code § 20-107.3, which governs awards of equitable distribution, 'is intended to recognize a marriage as a partnership and to provide a means to divide equitably the wealth accumulated during and by that partnership based on the monetary and non-monetary contributions of each spouse.'" *Payne v. Payne*, 77 Va. App. 570, 595 (2023) (quoting *von Raab v. von Raab*, 26 Va. App. 239, 245 (1997)). "Circuit courts have 'broad discretion' to make an equal or disparate division as long as they consider the factors in Code § 20-107.3(E)." *Chretien v. Chretien*, 53 Va. App. 200, 207 (2008) (quoting *Marion v. Marion*, 11 Va. App. 659, 663 (1991)). "The 'function of the [circuit court] is to arrive at a fair and equitable monetary award based on the equities and the rights and interests of each party in the marital property.'" *Wright v. Wright*, 61 Va. App. 432, 456 (2013) (alteration in original) (quoting *Fadness v. Fadness*, 52 Va. App. 833, 841 (2008)). An equitable distribution ruling "can be overturned only by a showing" that the circuit court abused its discretion. *Hamad*, 61 Va. App. at 606 (quoting *Smith v. Smith*, 43 Va. App. 279,

---

[14] Wife also assigns error to the circuit court's valuation of the marital residence. For the reason noted above, wife's arguments on this point are moot.

286 (2004)). "An abuse of discretion occurs only when 'reasonable jurists' could not disagree as to the proper decision." *Id.* at 607 (quoting *Brandau v. Brandau*, 52 Va. App. 632, 641 (2008)).

"Virginia law does not establish a presumption of equal distribution of marital assets." *Id.* at 606 (quoting *Watts v. Watts*, 40 Va. App. 685, 702 (2003)). "[A] distribution need not be numerically *equal* to be equitable." *Payne*, 77 Va. App. at 596. "A trial court 'need not start off at the 50-yard line and then look to the discretionary factors of Code § 20-107.3(E) to move the ball marker up or down the sidelines.'" *Hamad*, 61 Va. App. at 606 (quoting *Robbins v. Robbins*, 48 Va. App. 466, 480 (2006)). "Instead, a trial court 'must consider each of the § 20-107.3(E) statutory factors and only then determine what relative weight to assign to each.'" *Id.* (quoting *Robbins*, 48 Va. App. at 481). "Although 'the trial court *must* consider each of the statutory factors, [it] *may* determine what weight to assign to each of them.'" *Payne*, 77 Va. App. at 596 (alteration in original) (quoting *Robbins*, 48 Va. App. at 481).

The record shows that the circuit court considered all the Code § 20-107.3(E) factors when making its equitable distribution award, including some items challenged by wife. For instance, the circuit court must consider the "circumstances and factors which contributed to the dissolution of the marriage . . . ." Code § 20-107.3(E)(5). Here, the circuit court found that both husband and wife contributed to conflict in the marriage, that husband was "demanding" and both physically and mentally abusive, and that husband had engaged in a "bothersome" emotional relationship outside the marriage.

The circuit court should also consider such other factors as it "deems necessary or appropriate . . . in order to arrive at a fair and equitable monetary award." Code § 20-107.3(E)(11). While the circuit court did not specifically find on the marital residence's emotional value to wife, it did not need to under the statute. The circuit court, however, *did* extensively comment on the emotional character of the litigation, emphasizing the importance of retaining harmony within the

family as well as the centrality of the marital residence and other financial properties to the parties. The circuit court did not make a specific finding regarding the marital residence's emotional value to wife, but it did not act thoughtlessly when performing equitable distribution.

Therefore, this Court cannot say that "reasonable jurists" could not differ on how to fashion a "fair and equitable" award in these circumstances. *See Hamad*, 61 Va. App. at 607; *Wright*, 61 Va. App. at 456. Aside from its failure to distribute NFCU account x1424, as discussed above, the circuit court did not abuse its discretion in determining equitable distribution. This Court affirms the circuit court's judgment.

## II. Grounds for Divorce

The circuit court granted husband a divorce based on the parties living separate and apart for more than one year. Wife argues that the circuit court erred by failing to grant her a divorce based on the grounds of cruelty or constructive desertion. Wife contends that the evidence supported findings that husband abused her. She emphasizes that the circuit court found that husband's behavior was "inappropriate," his assault on wife's mother was "the final straw that broke the camel's back," and his "very close filial relationship" with his friend was "bothersome." Wife asserts that there was "more than sufficient evidence to support a finding of cruelty [or] constructive desertion" and the circuit court's "refusal" to award her a divorce based on fault grounds was "plainly wrong."

Still, wife does not argue that there was insufficient evidence to support a finding that the parties had lived separate and apart for more than one year. In fact, wife acknowledged that the circuit court had "the option of granting just a one-year separation divorce." "[W]here dual or multiple grounds for divorce exist, the [circuit court] can use [its] sound discretion to select the grounds upon which [it] will grant the divorce." *Payne*, 77 Va. App. at 584 (all but second alteration in original) (quoting *Williams v. Williams*, 14 Va. App. 217, 220 (1992)).

- 18 -

Accordingly, even if we assume that the record supports wife's argument about the fault grounds for divorce, the circuit court had "two equally legitimate grounds" for granting the divorce. *See Fadness*, 52 Va. App. at 840. Because the record supports finding that the parties lived apart for over a year, the circuit court did not err by granting a divorce on that basis. This Court, therefore, affirms the circuit court's judgment.

### III. Support

Wife also appeals the circuit court's spousal and child support awards. She argues that the circuit court "fail[ed] to allocate the Account [NFCU x1424]," "failed to consider evidence of [husband's] intentional acts which purposefully and substantially diminished [wife's] income," and "failed to include [wife's] work-related childcare costs."

Virginia's statutory scheme mandates that a circuit court determining spousal support must consider, either directly or indirectly, the equitable distribution provisions governing the marital property. Code § 20-107.1(E)(8). The circuit court also is required to consider the effect of the equitable distribution award on child support. *See* Code § 20-108.1(B)(11), (12), (15) (permitting a court to deviate from the presumptive calculation under the child support guidelines based on the "[e]arning capacity, obligations, [and] financial resources" of the parents, "[p]rovisions made with regard to the marital property under § 20-107.3, where said property earns income or has an income-earning potential," and "the equities for the parents and children"). Likewise, the child support guidelines include spousal support in the calculation. Code § 20-108.2(C).

However, this Court will not consider the specifics of wife's assigned errors here because we agree with her that the spousal and child support orders must be vacated. "Because we here reverse in part the trial court's award of equitable distribution," because of its failure to distribute NFCU account x1424, "on remand, the trial court will also have to thoroughly reassess" its

spousal support and child support awards. *Stark v. Dinarany*, 73 Va. App. 733, 754-55 (2021). The circuit court is instructed to set forth the findings required by Code §§ 20-107.1, -108.1(B), and -108.2(C).

## IV. Attorney Fees

### A. *Circuit Court's Award*

Wife argues that the circuit court erred by not awarding her more than $20,000 in attorney fees. Wife emphasizes that she presented evidence that her attorney fees totaled more than $120,000 and the $20,000 award "does not even cover the cost of the trial delay" that husband caused by failing to disclose all his assets. She also stresses that the disparity in the parties' incomes and husband's actions during the marriage and litigation warrant an award that "at a minimum" compensates her for the increase of attorney fees she incurred due to the continuance of the trial.

"[A]n award of attorney's fees and costs is a matter for the trial court's sound discretion after considering the circumstances and equities of the entire case." *Stark*, 73 Va. App. at 755 (alteration in original) (quoting *Jones v. Gates*, 68 Va. App. 100, 105 (2017)). The circuit court found that husband's "lack of forthrightness" caused a delay in the trial, and because of husband's actions, it awarded wife $20,000 in attorney fees. The circuit court acknowledged that the $20,000 award was "not the full amount that the continuance cost, but it [was] a substantial portion" of it. We note that the circuit court made detailed findings about support, the division of responsibilities, and the division of property (the failure to distribute the NFCU account notwithstanding). Considering the "deferential standard of review," the circuit court did not abuse its discretion in its assessment of the equities of the case and awarding wife $20,000.

B. *Attorney Fees on Appeal*

Both parties requested an award of attorney fees and costs incurred on appeal. "This Court has discretion to grant or deny attorney's fees incurred on appeal." *Stark*, 73 Va. App. at 757. "In making such a determination, the Court considers all the equities of the case." *Id.*

Wife and husband were *pro se* as appellants in their respective appeals. However, they were each represented by counsel as appellees, and so incurred attorney fees in that capacity. This appeal was not meritless. This Court, therefore, denies the requests for appellate attorney fees because the appeals were not "'frivolous or lacked substantial merit,' [nor do] the 'equities of the case' favor an award." *Koons v. Crane*, 72 Va. App. 720, 742-43 (2021) (quoting Rule 5A:30(b)(3)-(4)). The parties' requests for costs are also denied.

CONCLUSION

For these reasons, this Court affirms in part and reverses in part the circuit court's judgment. The case is remanded for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*