UNPUBLISHED

OURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Kelsey and Petty
Argued at Richmond, Virginia

KIMBERLY RENE ABBITT

                                            MEMORANDUM OPINION[*] BY
v.     Record No. 0961-13-2                 JUDGE D. ARTHUR KELSEY
                                            APRIL 8, 2014

COMMONWEALTH OF VIRGINIA

            FROM THE CIRCUIT COURT OF APPOMATTOX COUNTY
                       Kimberley S. White, Judge

            M. Paul Valois (James River Legal Associates, on brief),
            for appellant.

            Susan Baumgartner, Assistant Attorney General (Kenneth
            T. Cuccinelli, II, Attorney General, on brief), for appellee.


       The trial court found Kimberly Rene Abbitt guilty of attempted larceny by false

pretenses, a violation of Code §§ 18.2-26, 18.2-178.  On appeal, she challenges her conviction on

several grounds.  Because these arguments are either not preserved or meritless, we affirm.


                                            I.

       At trial, the evidence proved that Abbitt owed Dominion Virginia Power more than $600

for unpaid bills for electrical service to her home.  App. at 57.  She called a third-party payor that

processed payments to Dominion Virginia Power and requested that roughly $355 be credited

toward the unpaid bill. Id. at 62.  Without authorization, Abbitt gave the bill processor the

account and wire routing numbers for a SunTrust Bank account maintained by Thompson

Trucking, Inc., her father's employer, along with the employer's account and routing number.

Id. at 17; see also Oral Argument Audio at 7:03 to 7:18.  She had discovered those numbers on

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

one of her father's old payroll checks.  When the bill processor attempted to transfer the funds, SunTrust Bank contacted Thompson Trucking, discovered that the transfer was unauthorized, and refused to transfer the funds to Dominion Virginia Power.

A grand jury indicted Abbitt for attempting to commit larceny by false pretenses.  The indictment stated that she attempted to commit larceny from "Thompson Trucking, Inc."  App. at 4.  At her bench trial, Abbitt's counsel conceded that "she used the account number and the routing number without authorization . . . in an attempt to get credit on her [electric] bill."  Id. at 33-34.  Counsel nonetheless challenged the sufficiency of the evidence on the ground that Abbitt could not have *personally* obtained possession "of the money of SunTrust Bank" even if her scheme had worked.  Id. at 31.  Because she did not attempt to "take possession and title to this money directly," counsel argued, she could not be found guilty.  Id. at 32.

The trial court pointed out that larceny by false pretenses does not require the defendant to personally obtain the stolen money.  It is enough, the court correctly noted, that the defendant directs the money to "'his nominee.'"  Id. at 34 (quoting Bolden v. Commonwealth, 28 Va. App. 488, 492, 507 S.E.2d 84, 86 (1998) (quoting Cunningham v. Commonwealth, 219 Va. 399, 402, 247 S.E.2d 683, 685 (1978))).  Abbitt's counsel candidly replied, "that's an issue . . . I hadn't thought about."  Id. at 36.  Counsel then conceded, "We have all the other elements. . . .  [Y]ou have an intent to defraud, there is no question about it.  You have a false representation."  Id. at 36-37.  Counsel later made his position clear:  "[W]e'll concede that absent this one element [the nominee issue], you've got the rest for an attempt."  Id. at 41.  "[Y]ou've certainly got sufficient evidence to convict," counsel acknowledged.  Id. at 44.

After this last concession, the trial court held, "[T]he evidence is sufficient to find Ms. Abbitt guilty as charged of the attempt to obtain [money or other property that may be the subject of larceny] by false pretense or token from Thompson Trucking, Inc., with the intent to

- 2 -

defraud," in violation of Code § 18.2-178, and punishable under Code § 18.2-26. App. at 44. The court held the matter under advisement until the sentencing hearing. At that hearing, Abbitt's counsel renewed his challenge on "the issue of false pretense to benefit a nominee" and argued about the role of Dominion Virginia Power as the alleged nominee. Id. at 79. The trial court rejected the argument, found her guilty, and entered a final sentencing order.

II.

On appeal, Abbitt raises three assignments of error claiming that the trial court "erred in finding the evidence sufficient to convict." Appellant's Br. at 2. The first is that the evidence, Abbitt contends, "proved that a third party used appellant's false statement to attempt to take title of money belonging to SunTrust Bank." Id. The second is that "the evidence proved that appellant intended to obtain electric service" and did not prove that she "attempt[ed] to obtain currency by use of false statements." Id. Finally, she asserts that the "crime was legally impossible." Id.

We begin our analysis with some general observations. Like most appellate courts, we consider assignments of error to be essential to effective appellate advocacy. Given the malleability of words and the subtle vagaries of argument, we expect an appellant to state with focused specificity why he believes the trial court erred. As some of the older cases put it, an appellant must "lay his finger on the error." Cottrell v. Commonwealth, 134 Va. 554, 560, 113 S.E. 728, 730 (1922) (internal quotation marks omitted); see also Carroll v. Commonwealth, 280 Va. 641, 649, 701 S.E.2d 414, 418 (2010). We "limit discussion to these points," Harlow v. Commonwealth, 195 Va. 269, 271, 77 S.E.2d 851, 853 (1953), and rarely, if ever, go beyond them.

A related principle "requires a litigant to *specifically* assert in the trial court the legal theory he seeks to raise on appeal." Asfaw v. Commonwealth, 56 Va. App. 158, 165 n.4, 692

S.E.2d 261, 265 n.4 (2010) (applying Rule 5A:18). "If the differences are merely semantic, we overlook them as insignificant. But truly substantive differences, even if quite subtle, cannot be overlooked. Nor should they be." Hamad v. Hamad, 61 Va. App. 593, 600, 739 S.E.2d 232, 236 (2013) (footnote omitted).

Neglecting this principle would be unfair to the trial judge, since it can hardly be said that the judge erred by rejecting an argument never made. See Brandon v. Cox, 284 Va. 251, 255, 736 S.E.2d 695, 696 (2012) (noting the need "to protect the trial court from appeals based upon undisclosed grounds" (internal quotation marks omitted)). For the same reason, "in fairness to the trial judge," we should police our reasoning on appeal to ensure that we do not "put a different twist on a question that is at odds with the question presented to the trial court." Commonwealth v. Shifflett, 257 Va. 34, 44, 510 S.E.2d 232, 237 (1999).

Equally important is the potential unfairness to parties defending an appeal. Allowing an appellant to raise new arguments on appeal often prejudices his opponent, who may have been able to remedy the alleged mistake while the matter was still pending in the trial court but is wholly unable to do so once the case goes on appeal. See Murillo-Rodriguez v. Commonwealth, 279 Va. 64, 79, 688 S.E.2d 199, 207 (2010) (observing that a timely objection "provides the opposing party an opportunity to address an issue at a time when the course of the proceedings may be altered in response to the problem presented").[1] As experienced trial lawyers know, when one avenue of advocacy is closed, another heading in the same direction often appears. But that rarely happens when the closure occurs for the first time on appeal.

---

[1] See also Nusbaum v. Berlin, 273 Va. 385, 402-03, 641 S.E.2d 494, 503 (2007); Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991); Hilton v. Fayen, 196 Va. 860, 866, 86 S.E.2d 40, 43 (1955); Ohree v. Commonwealth, 26 Va. App. 299, 307, 494 S.E.2d 484, 488 (1998).

We address these threshold principles in some detail because most of Abbitt's arguments on appeal violate them. Her first assignment of error challenges the sufficiency of the evidence, but her argument on brief asserts a "fatal variance" between the pleadings (identifying the victim in the indictment as Thompson Trucking, Inc.) and the proof (arguably identifying the victim as SunTrust Bank). Abbitt never made either of these arguments (factual insufficiency or fatal variance) in the trial court, either at the time of the motion to strike[2] or afterwards.[3]

To be sure, on the sufficiency issue, Abbitt conceded that the evidence was sufficient for every issue in the case *except for* the nominee issue.[4] As we have repeatedly said: "A general

---

[2] On the fatal variance issue, Abbitt's counsel asserts on appeal that he argued the fatal variance point (without using that precise terminology) during his motion to strike at trial. See Oral Argument Audio at 5:37 to 5:43. We find the only possible allusion to such an argument to be counsel's fleeting remark at trial that "[t]here is an argument to be made under U.C.C. law that the proper party to this case would be the bank [b]ecause the . . . account holder is actually a creditor to the bank and the bank is actually the titleholder to the money." App. at 32. However, counsel detracted from that argument as a stand-alone issue for which he was requesting a ruling by immediately reverting back to his nominee argument. "But *even so*," he continued, "as an operation of law, she would have to take [personal] possession." Id. (emphasis added).

We read this "proper party" remark as an unimportant aside, far too indescript and unassertive to place a trial court or a prosecutor on notice that Abbitt was claiming a fatal variance between the indictment and the proof. Had the trial court understood it that way, the court would have no doubt questioned counsel on whether he was prejudiced by the alleged variance. Had the prosecutor understood it that way, he may have well moved for an amendment to the indictment. But nothing of the kind took place because no one understood counsel's remark to be a fatal variance argument seeking the dismissal of the indictment.

[3] Abbitt's counsel also asserts that he had "an extended dialogue" with the trial judge about the fatal variance issue which continued from trial into the sentencing hearing. See Oral Argument Audio at 5:44 to 6:00. The record, however, does not support this assertion. At the sentencing hearing, the trial judge stated, "I took the case under advisement . . . frankly, to give the [parties] the opportunity [to present] evidence . . . or law that could be brought before the Court that would show that the original finding . . . was not proper. I have not heard that." App. at 83-84.

[4] See App. at 36-37 ("We have all the other elements [of the crime]. . . . [Y]ou have an intent to defraud, there is no question about it. You have the false representation."); id. at 41 ("[W]e'll concede that absent this one element [the nominee issue], you've got the rest for an attempt."); id. at 44 ("[Y]ou've certainly got sufficient evidence to convict at that point, I'd just ask you not to do it until you get a presentence report.").

argument or an abstract reference to the law is not sufficient to preserve an issue. Making one specific argument on an issue does not preserve a separate legal point on the same issue for review." Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*) (citations omitted), aff'd by unpublished order, SCV No. 040019 (Va. Oct. 15, 2004). To make matters worse, Abbitt's fatal variance argument in her appellate brief does not fairly fall within the scope of her assignment of error, which appears to be solely focused on sufficiency of the evidence. See generally Purvy v. Commonwealth, 59 Va. App. 260, 269-70, 717 S.E.2d 847, 851-52 (2011) (addressing the differing consequences of a true fatal variance argument and a challenge to the sufficiency of the evidence).

Abbitt's second assignment of error alleged that the evidence was insufficient to prove that she fraudulently intended to "obtain currency" from Thompson Trucking but instead attempted only to "obtain electric service" from Dominion Virginia Power. Appellant's Br. at 2. Here again, Abbitt never clearly made that point in the trial court. To the contrary, as noted earlier, Abbitt's counsel expressly conceded the sufficiency of the evidence on every issue other than the nominee point. See App. at 36-37, 41, 44; see also Oral Argument Audio at 5:00 to 5:23. And we are reluctant to address even the nominee point, given that Abbitt's brief on appeal makes no mention of it. See Rule 5A:20(e); Mitchell v. Commonwealth, 60 Va. App. 349, 352, 727 S.E.2d 783, 784 (2012) ("A court of review is entitled to have the issues clearly defined and to be cited pertinent authority. The appellate court is not a depository in which the appellant may dump the burden of argument and research." (citation omitted)).[5]

---

[5] Under larceny law, a defendant can be guilty either by personally obtaining the property of another or by directing that the property pass to his nominee. Baker v. Commonwealth, 225 Va. 192, 194, 300 S.E.2d 788, 789 (1983) (quoting Cunningham, 219 Va. at 402, 247 S.E.2d at 685). Sitting as factfinder, the trial court found that Abbitt attempted to direct the funds (through an unwitting agent, the bill processor) to Dominion Virginia Power, her intended nominee. App. at 42-43. Abbitt does not contest this point on appeal. See Oral Argument Audio at 5:33 to 5:42

Abbitt's final argument, that "legal impossibility" precludes her conviction, was mentioned very briefly in the trial court.[6] Because she frames the issue as an evidentiary sufficiency argument in her assignment of error, Appellant's Br. at 2, her concessions at trial subsume this point as well. It is possible, though not probable, that the trial court associated Abbitt's argument regarding legal impossibility with the nominee issue. But we need not thread the default needle on this topic given that we would find the impossibility argument meritless as a matter of law.

In Virginia, "factual impossibility is not a defense to a crime, but legal impossibility is." Brittle v. Commonwealth, 54 Va. App. 505, 516, 680 S.E.2d 335, 341 (2009); see also 2 Wayne R. LaFave, Substantive Criminal Law § 11.5(a), at 233 (2d ed. 2003) ("All courts are in agreement that what is usually referred to as 'factual impossibility' is no defense to a charge of attempt."). "Legal impossibility occurs when a defendant's actions, even if fully carried out exactly as he intends, would not constitute a crime." Brittle, 54 Va. App. at 516, 680 S.E.2d at 341 (quoting Hix v. Commonwealth, 270 Va. 335, 342, 619 S.E.2d 80, 84 (2005)).[7] That cannot be said to be the case here. If Abbitt had carried out her plan as she intended it, funds from Thompson Trucking's payroll account at SunTrust Bank would have been credited, dollar for

_____

(conceding that the nominee issue is not the same as the fatal variance point and was not being argued on appeal).

[6] In the trial court, Abbitt's counsel equivocated between invoking the defense of legal impossibility or factual impossibility. He initially said that it would have been legally impossible for Abbitt to have committed the crime, App. at 32, but then he conceded to the trial court that whether Abbitt attempted to deprive either the trucking company or its bank of the money "would be a *factual* impossibility argument," id. at 35 (emphasis added). Although counsel later referred again to legal impossibility, his arguments indicated that he meant factual impossibility, because he argued that "[t]here was no chance [Abbitt's electric bill] would get paid because she used her own name. She wasn't an account holder." Id. at 36.

[7] This principle has a long history in the common law. See generally 1 Joel Prentiss Bishop, Commentaries on the Criminal Law § 742, at 413 (6th ed. 1877); 1 Francis Wharton, A Treatise on Criminal Law §§ 179, 182, at 210, 217 (9th ed. 1885).

dollar, to Abbitt's overdue account with Dominion Virginia Power.  That the plan was so inept as to be nearly futile may have rendered it *factually* improbable (if not impossible), but not *legally* impossible.

## III.

In short, because Abbitt's arguments were either not preserved or meritless, we affirm her conviction for attempting to commit larceny by false pretenses.

<u>Affirmed.</u>