COURT OF APPEALS OF VIRGINIA

Present: Judges Raphael, Lorish and Bernhard
Argued at Christiansburg, Virginia


KEVON LAMONT MCDANIEL

MEMORANDUM OPINION[*] BY
v.          Record No. 2020-24-3          JUDGE STUART A. RAPHAEL
OCTOBER 28, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
J. Frederick Watson, Judge

Catherine Marie Burnett (Catherine Burnett Law, on brief) for appellant.

David A. Stock, Senior Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Kevon Lamont McDaniel appeals his convictions for possessing a controlled substance,

possessing a controlled substance with the intent to distribute, and possessing a firearm during

the commission of those drug-possession offenses. McDaniel challenges the sufficiency of the

evidence for each conviction. He also claims that the juvenile and domestic relations district

court erred by amending its transfer order nunc pro tunc after McDaniel noted his appeal of the

transfer in the circuit court. Finding no error, we affirm the judgment.

BACKGROUND

We recite the facts in the light most favorable to the Commonwealth, the party that

prevailed at trial. *Camann v. Commonwealth*, 79 Va. App. 427, 431 (2024) (en banc). "Doing

so requires that we 'discard' the defendant's evidence when it conflicts with the

Commonwealth's evidence, 'regard as true all the credible evidence favorable to the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

Commonwealth,' and read 'all fair inferences' in the Commonwealth's favor." *Id.* (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

*Discovery of the firearm and controlled substances*

Around 3:00 a.m. on August 7, 2022, law-enforcement officers responded to the 1600 block of Filmore Street in Lynchburg based on reports of shots fired. McDaniel was sitting on the front steps of a house, bleeding from a gunshot wound to his left leg. Paramedics treated him until he was taken to the hospital. April Garrison owned the house and lived there with her adult son. Both were present when officers arrived.[1]

Inside the house, officers found a pair of bloody shoes and a trail of bloody shoe prints leading from the living room to the kitchen. The officers requested a K9 unit to investigate the rest of the house. After the dog and its handling officer inspected the home, officers proceeded to a second-story deck at the back of the house. The dog signaled that it smelled "fresh human odor" around the deck.

The deck was accessible only through a door off the kitchen. "[A] very thick powder" was scattered in front of the door, "undisturbed" until the officers went onto the deck. The record does not indicate where the powder came from.

Officers discovered a blue duffel bag in the corner of the deck. Inside the bag, they found an "AK style pistol," "a Glock magazine," and "a Glock back strap." Detective Nils Olsson joined the officers on scene to process the evidence collected. He testified that the bag was stained with "a red fluid," presumably blood. The bag was swabbed for DNA. Then a warrant was obtained to search the rest of the house.

---

[1] It is unclear from the record why McDaniel was at Garrison's house, or whether the two had any connection. Garrison was subpoenaed to testify but failed to appear for trial.

During a "protective sweep" of the house, Detective Davis passed by an open trash can in the middle of the kitchen that contained a bag with "an off white chunk." He also spotted a "clear plastic [bag] with multiple pills colored in blue." Each bag had traces of "a red substance," which Davis suspected to be blood. Each bag was swabbed for DNA. Davis then swore out a warrant for McDaniel's DNA, which he obtained from McDaniel at the hospital. Officers also discovered gun magazines and five vacuum-sealed packages of suspected marijuana.[2]

Swabs from the firearm, bloody shoe prints, duffel bag, and drug baggies were analyzed for DNA. Nicole Harold, a DNA expert, testified that McDaniel "could not be eliminated as a contributor" to the DNA from the drug baggies and shoe prints. The probability of the DNA profile across the three swabs coming from someone other than McDaniel was about 1 in 7.2 billion. There was not enough DNA on the gun, however, to perform a comparison. The duffel-bag swabs were similarly inconclusive.

Neil Vowels, an expert in forensic science, analyzed the suspected narcotics recovered from the trash can. He testified that the "off-white chunk" contained cocaine and that the blue pills contained fentanyl. The blue pills were "marked with an M in a box on one side and [a] 30 on the other." Vowels testified that the pill markings resembled oxycodone.

*Evidence from McDaniel's cellphone*

The Commonwealth introduced evidence from McDaniel's cellphone, which was seized by detectives in a separate criminal case. The evidence included media files and a data-extraction report.[3] McDaniel's phone was logged into a Facebook profile bearing the name

---

[2] These items were never linked to McDaniel.

[3] The phone had two Apple ID's, one being Countup_Kevon@icloud.com. Sergeant Hendrix observed videos and "hundreds of pictures" of McDaniel on the phone.

"Countup Kevon." Sergeant Hendrix, who had been conducting electronic surveillance of that Facebook profile, knew that "Countup Kevon" was a nickname for McDaniel. The page associated with that profile had photos of McDaniel.

Hendrix obtained a search warrant for McDaniel's Facebook page on August 25, 2022—a few weeks after police found McDaniel wounded on Filmore Street. A video from August 3, 2022, depicting McDaniel dancing with two guns, was posted to the Facebook page. It was also stored on McDaniel's phone. Hendrix took screenshots from the video, creating a series of photo stills that he compared with the gun recovered from the duffel bag:



| Gun in Facebook video | Gun recovered from duffel bag |

The gun's "muzzle area" had "a series of unique concentric circles," the same as the gun in the video screenshots. In addition, the gun's muzzle was scratched, creating a "discoloration" that could also be seen in the photo stills.

Hendrix, "an expert in the illegal use and distribution of narcotics," testified that on August 6, 2022, the Countup Kevon account posted a "masked advertisement of blue fentanyl pills for sale." The post reflected an "M" in a blue circle, followed by the phrases "30s" and "Yerkssss." The post said "20 a pop" followed by two emojis. Based on his "expertise in the use and distribution of narcotics," Hendrix explained that the post was "essentially saying I have

blue fentanyl pills for sale, they are twenty dollars a pop, reach out to me on my phone to do the deal."

Hendrix also testified that the 20 pills recovered from the trash can was an amount "inconsistent with personal use." Even a "heavy user" of these pills, he noted, would likely have only "five to ten" in their possession. Hendrix also explained that drug dealers often carry firearms "for protection" because they "are ripe to be victims of robberies or shootings."

*McDaniel's transfer to the circuit court*

McDaniel, who was 17 years old at the time of the alleged offenses, was arraigned in the Lynchburg juvenile and domestic relations district court. Following a probable-cause hearing on October 30, 2023, the JDR court transferred the case to circuit court. McDaniel contested the transfer, and the matter was heard on November 29, 2023.

McDaniel argued that the JDR court did not substantially comply with the statutory requirements because it "did not mark the box saying that the juvenile is fourteen years of age or more at the time of the alleged offense, the juvenile is competent to stand trial and the juvenile is not a proper person to remain in the Juvenile Court." In addition, he claimed, the JDR court "did not check the box to say the statutory factors in [Code §] 16.1-269.1(A)(4) have been considered." The Commonwealth noted that the JDR judge had written "18 years old" in parentheses next to McDaniel's name on the transfer order. It added that a "transfer report was prepared and issued" that "clearly lines out all of the factors for juvenile transfer." Over McDaniel's objection, the circuit court continued the case so the Commonwealth could explore options, including whether the transfer order could be corrected nunc pro tunc.

Upon the Commonwealth's motion, the JDR court amended the transfer order nunc pro tunc to the transfer date, and the parties returned to circuit court on December 18 to litigate the transfer appeal. The circuit court found that the unchecked boxes on the original transfer order

were "a clerical mistake," and with those boxes now checked, the JDR court substantially complied with the transfer statute. On January 3, 2023, the grand jury returned a true bill of indictment against McDaniel.

The case proceeded to a one-day bench trial on April 8, 2024. The Commonwealth's nine witnesses testified to the facts set forth above. McDaniel rested without testifying. After denying McDaniel's motions to strike, the circuit court found McDaniel guilty of the crimes charged: possession of a firearm while in possession of a controlled substance; possession of a firearm while in possession of a controlled substance with the intent to distribute; possession of a controlled substance; and possession of a controlled substance with the intent to distribute. McDaniel received an active sentence of six years and five months' incarceration. He noted a timely appeal.

ANALYSIS

*The JDR transfer order (Assignments of Error I and II)*

McDaniel claims that the circuit court erred by granting the continuance, by allowing the Commonwealth to seek a nunc pro tunc order from the JDR court, and then by accepting the amended transfer order. We conclude that the circuit court did not abuse its discretion by granting the continuance and that any error with the transfer order was cured when the grand jury returned the indictment.

Whether to grant or deny a continuance "is within the sound discretion of the circuit court and must be considered in view of the circumstances unique to each case." *Johnson v. Commonwealth*, 83 Va. App. 324, 343 (2025) (quoting *Bailey v. Commonwealth*, 73 Va. App. 250, 259 (2021)). The abuse-of-discretion "standard 'rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie.'" *Bailey*, 73 Va. App. at 265 (quoting *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013)). In reviewing the trial

- 6 -

court's decision, an appellate court must "show enough deference to [the] primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the first instance." *Id.* (second alteration in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013)).

Once McDaniel appealed the JDR court's transfer order under Code § 16.1-269.4, the circuit court had to review whether "there ha[d] been substantial compliance" with the transfer statute. *Schwartz v. Commonwealth*, 41 Va. App. 61, 69 (2003) (quoting Code § 16.1-269.6(B)), *aff'd*, 267 Va. 751 (2004). Juvenile transfer is subject to certain conditions, including that the juvenile is at least 14 years old and competent to stand trial; the juvenile is not a proper person to remain in JDR court; proper notice has been given to the juvenile and his parent or guardian; and probable cause exists to believe the juvenile has committed an act "which would be a felony if committed by an adult." Code § 16.1-269.1(A). The absence of a complete transfer order impaired the circuit court's ability to assess the JDR court's compliance with the statute.[4] So the circuit court did not abuse its discretion by granting a brief continuance.

McDaniel argues that the JDR court "inappropriately used *nunc pro tunc* to rescue" the transfer order, claiming that the court "was not merely fixing a . . . scriveners error." McDaniel failed to make the nunc pro tunc order part of the record on appeal. In any case, however, Code § 16.1-269.1(E) cured any error committed by the JDR court in amending the transfer order nunc pro tunc.

Code § 16.1-269.1(E) provides that "[a]n indictment in the circuit court cures any error or defect in any proceeding held in the juvenile court except with respect to the juvenile's age."

---

[4] Additionally, McDaniel fails to show that he was prejudiced by the continuance. The party challenging a continuance "must demonstrate both 'an abuse of discretion *and* resulting prejudice[.]'" *Bailey*, 73 Va. App. at 265 (alteration in original) (quoting *Haugen v. Shenandoah Valley Dep't of Soc. Servs.*, 274 Va. 27, 33 (2007)). The appeal was continued for only one week, and the JDR court revisited its transfer order within three business days.

Because "an appeal from a transfer decision under Code § 16.1-269.4 is the final step in the transfer process," it too can be cured by a grand-jury indictment. *Shackleford v. Commonwealth*, 262 Va. 196, 206 (2001). Virginia appellate courts have applied the curative provision to a JDR court's failure to comply with parental-notice requirements, *see Angel v. Commonwealth*, 281 Va. 248, 261-62 (2011), and a failure to make findings about the juvenile's intellectual disability, *Scott v. Commonwealth*, 31 Va. App. 461, 465 (2000). Because it is undisputed that McDaniel was 17 years old at the time of the offense—and 18 years old by the time of the arraignment— Code § 16.1-269.1(E) cured any potential error in amending the transfer order nunc pro tunc.

*Sufficiency of the evidence (Assignments of Error III-VI)*

When an appeal challenges the sufficiency of the evidence, "[a]n appellate court reviews a lower court's findings of fact 'with the highest degree of appellate deference.'" *Commonwealth v. Wilkerson*, ___ Va. ___, ___ (Feb. 20, 2025) (quoting *Commonwealth v. Barney*, 302 Va. 84, 96 (2023)). "[T]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it." *Id.* at ___ (quoting *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024)). The only relevant question for this Court is "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Garrick*, 303 Va. at 182.

"Code § 18.2-250 makes it a criminal offense 'for any person knowingly or intentionally to possess a controlled substance.'" *Wilkerson*, ___ Va. at ___. Code § 18.2-248(A) makes it "unlawful for any person to manufacture, sell, give, distribute or possess with intent to manufacture, sell, give, or distribute a controlled substance." Possession can be actual or constructive, so long as it appears beyond a reasonable doubt "that the defendant intentionally and consciously possessed the contraband with knowledge of its nature and character.'" *Wilkerson*, ___ Va. at ___ (quoting *Garrick*, 303 Va. at 183).

- 8 -

> To prove constructive possession, the Commonwealth "must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the contraband and that the contraband was subject to his dominion and control."

*Id.* at ___ (quoting *Garrick*, 303 Va. at 183). "[T]he issue of what constitutes constructive possession 'is largely a factual one.'" *Lewis v. Commonwealth*, 76 Va. App. 92, 102 (2022) (alteration in original) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009)).

The evidence supports the circuit court's finding that McDaniel possessed cocaine and fentanyl and that he intended to distribute the fentanyl. To start, McDaniel's blood was on each baggie containing the drugs. The court could reasonably conclude that he left blood throughout the house while bleeding from his gunshot wound. The day before, McDaniel posted a cryptic message to his Facebook page advertising fentanyl pills for "$20 a pop." Hendrix testified that the "blue circle with the white M Emoji with the S" used in McDaniel's post was a street-coded "electronic symbol for blue fentanyl pills." He also testified that "30s" and "Yerks" were common street names for fentanyl. Detective Davis testified that the cocaine looked like a "crack rock," and Sergeant Hendrix confirmed that it was packaged like a controlled substance. Because the cocaine "looked and was packaged like a controlled substance," *Garrick*, 303 Va. at 184 n.2, we see no merit in McDaniel's claim that he was unaware of its nature and character.

"Absent a direct admission by the defendant, intent to distribute must necessarily be proved by circumstantial evidence." *Cole v. Commonwealth*, 294 Va. 342, 361 (2017) (quoting *Williams v. Commonwealth*, 278 Va. 190, 194 (2009)). Circumstantial evidence probative of an intent to distribute a controlled substance may include the quantity of drugs seized, how the drugs are packaged, the presence of firearms, and "whether the quantity of drugs was 'inconsistent with personal use.'" *Id.* (quoting *McCain v. Commonwealth*, 261 Va. 483, 493 (2001)).

All of those things are present here. The "fentanyl pills were packaged individually in corner baggies," the typical packaging for that drug. A firearm was stashed not far from where the drugs were found. Hendrix testified that possessing 20 fentanyl pills was inconsistent with personal use. Thus, the evidence sufficed to prove that McDaniel possessed the fentanyl pills with the intent to distribute them.

The record likewise shows that McDaniel possessed the gun found in the duffel bag on the back deck, in violation of Code §§ 18.2-308.4(A) and 18.2-308.4(C). Constructive possession alone is enough. *Wright v. Commonwealth*, 278 Va. 754, 759 (2009). The Commonwealth had to adduce "evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm and that the firearm was subject to his dominion and control." *Id.* (quoting *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008)).

The Commonwealth satisfied that burden. Officers found an "AK-style pistol" at the same house where they encountered McDaniel. The police dog detected "fresh human odor" on the deck where the gun was found, suggesting that someone had been there before police arrived. Although the DNA on the duffel bag and the gun was inconclusive, Sergeant Hendrix's testimony connected McDaniel to the weapon. The gun's distinctive muzzle, together with a scratch that created discoloration, matched the gun in the video uploaded to McDaniel's Facebook page four days earlier.[5] Hendrix also noted that drug dealers often carry guns for

---

[5] Our conclusion is in line with some of our recent unpublished decisions, which we note for their persuasive value despite that they are not precedential under Rule 5A:1(f). *See Taylor v. Commonwealth*, No. 1275-20-2, slip op. at 3, 5, 2022 Va. App. LEXIS 60, at *3, 7 (Mar. 8, 2022) (gun found under Taylor's passenger seat "appeared 'almost, if not, identical'" to a gun pictured on Taylor's Facebook page two days before his arrest, which supported the trial court's conclusion that he constructively possessed the gun on the night in question); *Harris v. Commonwealth*, No. 1653-22-2, slip op. at 12, 2024 Va. App. LEXIS 192, at *16 (Apr. 9, 2024) (firearm recovered from the center console of Harris's vehicle was the "same firearm . . . seen in photographs recovered from Harris's phone").

protection. A reasonable fact-finder could reasonably conclude that the AK-style pistol was McDaniel's and that he possessed the gun at the same time that he possessed a controlled substance with the intent to distribute it.

CONCLUSION

Any error committed during the JDR-transfer process was cured by the grand-jury indictment, and the evidence sufficed to support each of McDaniel's convictions.

*Affirmed.*